The State, *ex rel.* Worrell, *v.* Peelle.

Filed Jan. 15, 1890.

---◆---

No. 14,978.

## THE STATE, EX REL. WORRELL, *v.* PEELLE.

CONSTITUTIONAL LAW.—*Bureau of Statistics.*—*The Chief a State Officer.*— The office of chief of the bureau of statistics, a department created by an act of the General Assembly of 1879 (section 5717, R. S. 1881), for the purpose of gathering, systematizing and distributing statistical information and details relating to agriculture, manufacturing, mining, commerce, education, labor, social condition, etc., is a State, and not a legislative office, and the chief is a State officer.

SAME.—*New Constitution.*—*State Officers to be Elected by the People.*—*Tenure of Office.*—*Legislature.*—Under the new Constitution, of 1851, the power to elect State officers whose duties are general remains with the people, and State officers must be chosen by the electors of the State in such manner as may be prescribed by law, and it is the duty of the Legislature in creating a State office to fix the term of the office, and provide for the election of the officer by the people.

SAME.—*Manner of Election.*—*Authority of Legislature.*—*Statute.*—*Construction of.*—By section 1, article 15, of the Constitution, which provides that, "All officers whose appointments are not otherwise provided for in this Constitution shall be chosen in such manner as now is or hereafter may

The State, *ex rel.* Worrell, *v.* Peelle.

be law," authority is conferred upon the Legislature to prescribe by law the *manner* of electing such officers, but not the power·itself to elect.

SAME.—*Act of 1879 Unrepealed.*—The act of 1883 amending section 2 of the act of 1879, providing for the election of the chief of the bureau of statistics by the General Assembly, is unconstitutional and void, and the act of 1879, attempted to be amended, is still in force.

SAME.—*Governor.—May Fill Vacancy.*—Section 2 of the act of 1879, providing that the Governor shall appoint the chief of the bureau of statistics is, in so far as it provides for such appointment, simply declaratory of the Constitution, and gives to the Governor only the power he possessed by virtue of it, *i. e.*, the power to fill the vacancy until an election by the people.

SAME.—*Tenure.—Fixed by Section 2 of Act of 1879.*—The effect of this section, which is valid and operative to fix the tenure of the office, is to fix it at two years.

SAME.—*Right of People to Elect at General Election.—Governor's Appointee.— Term of Office.*—The people have the right to elect the chief of the bureau of statistics at the general election provided for by section 4678, R. S. 1881, and the appointee of the Governor holds until his successor is elected and qualified.

SAME.—*Information.—Sufficiency of.*—The General Assembly having no power to elect the chief of the bureau, an election by it is void; and an information by a relator, an appointee of the Governor, which alleges that there is a vacancy in the office; that the defendant usurped the office and illegally holds possession of it; that the Governor appointed the relator, who is eligible and entitled to the office, is sufficient, and a demurrer thereto should be overruled.

ELLIOTT, C. J., and MITCHELL, J., dissent.

From the Marion Superior Court.

*L. T. Michener,* Attorney General, *A. C. Harris, A. J. Beveridge, L. M. Campbell* and *J. H. Gillett,* for appellant.

*S. J. Peelle, W. L. Taylor, J. E. McCullough* and *L. P. Harlan,* for appellee.

OLDS, J.—The relator filed his information to obtain possession of the office of chief of the "Indiana Bureau of Statistics," to which office he claimed to have been duly appointed by the Governor of the State, and for the removal of the defendant, William A. Peelle, Jr., who it is alleged had usurped and illegally continued to hold such office.

The defendant demurred to the information in the court below, stating two causes of demurrer :

"*First.* That the complaint does not state facts sufficient to constitute a cause of action.

"*Second.* That the plaintiff has not legal capacity to sue."

The court sustained the demurrer, to which ruling the plaintiff excepted at the time, and elected to stand on the information as filed ; thereupon the court rendered judgment for the defendant. From this judgment the plaintiff appeals, and assigns as error the ruling of the court in sustaining the demurrer to the information.

It is contended by counsel for the appellee that, notwithstanding the relator may be entitled to the office, and the defendant has usurped, and continues to illegally hold it, the information does not state facts sufficient to entitle the relator to the relief asked, and that the demurrer was rightfully sustained.

This question we have considered, and think the information not subject to the objections urged to it, and that it is sufficient. It alleges facts showing the date of appellant's appointment ; that there was at the time a vacancy in the office ; that the relator was duly appointed by the Governor of the State, and that he is eligible to the office ; that the defendant had usurped and illegally held it, and a demand for the possession of the office.

This brings us to the consideration of the chief and leading questions in the case.

The Legislature of the State in 1879 passed an act creating a department of statistics, and the first section of the act (R. S. 1881, section 5717) declared the purpose of the act to be " for the collection and dissemination of information, hereinafter provided, by annual printed reports made to the Governor and Legislature of the State."

The second section provided for the appointment of a chief, and is as follows: " The Governor is hereby authorized to

appoint, as soon after the passage of this act as convenient, and thereafter biennially, some suitable person to act as chief, who shall have power to employ such assistants as he may deem necessary, and said officer and assistants shall constitute the Indiana Bureau of Statistics, with headquarters to be furnished by the State."

Section three prescribed the duties of the bureau, as follows: "The duties of said bureau shall be to collect, systematize, tabulate and present in annual reports, as hereinafter provided, statistical information and details relating to agriculture, manufacturing, mining, commerce, education, labor, social and sanitary condition, vital statistics, marriages, and deaths, and to the permanent prosperity of the productive industry of the people of the State."

Section four made it the duty of all persons, officers and corporations to give and furnish information on blanks, and in answer to questions relating to the duties of the bureau. The act provided for the salary of the chief, and prescribed penalties for a failure to give information.

By an act passed in 1883 (Elliott's Supp., section 1852) section two of the act of 1879 was amended, and the amended section made it the duty of the two houses of the General Assembly, in joint convention, to select at its regular biennial session the chief, and in case of vacancy in the office by death, resignation or dismissal, the Governor should supply the vacancy by appointment, and provided that the first election of such chief should be held on the taking effect of the act.

In 1889 the Legislature passed an additional act relating to such bureau of statistics, by which they impose additional duties on the chief of the bureau. Elliott's Supp., section 1854. Section 1 provides that, "in addition to the other duties now imposed by law on the chief of the Indiana Bureau of Statistics, he shall collect, compile, and systematize statistics, with reference to the subject of labor, in its social, educational, industrial, and general condition, wages

and treatment of all classes of our working people, to the end that the effects of the same upon the permanent prosperity and productive industry may be shown, and shall report to the Legislature, in convenient form, the results of his investigation."

Section 2 provides that "the duties of such bureau shall be to collect in the manner hereinafter provided, assort, systematize, print and present in biennial reports to the Legislature statistical details relating to all departments of labor in this State, including the penal institutions thereof, particularly concerning the hours of labor, the number of laborers and mechanics employed, the number of apprentices in each trade, with the nativity of such laborers, mechanics, and apprentices, wages earned, savings from the same, the culture, moral and mental, with age and sex of persons employed; the number and character of accidents, the sanitary condition of institutions where labor is employed, as well as the influences of the several kinds of labor, and the use of intoxicating liquors upon the health and mental condition of the laborers; the restrictions, if any, which are put upon apprentices when indentured; the proportion of married laborers and mechanics who live in rented houses, with the average annual rental of the same; the average number of members in the families of married laborers and mechanics; the value of property owned by laborers or mechanics (if foreign born) upon their arrival in this country, and the length of time they have resided here; the subjects of co-operation, strikes, or other labor difficulties; trades-unions, and other labor organizations, and their effects on labor and capital, with such other matter relating to the commercial, industrial and sanitary condition of the laboring classes and permanent prosperity of the respective industries of the State as such bureau may be able to gather, accompanied by such recommendations relating thereto as the bureau may deem proper."

Section 3 authorizes the chief and deputy to examine wit-

nesses, and gives them power to compel persons to produce and give the information desired.

Section 4 prescribes penalties for a refusal to furnish information, and answer questions asked by the chief and his deputy.

Section 5 authorizes the employment of a deputy by the chief, at a salary of $1,000 per annum, and the employment of other assistants.

Section 6 appropriates $5,000 additional per annum to carry out the provisions of the act.

Section 7 allows the chief $600 additional salary, making, in all, $1,800 per annum.

By section 8 it is made the duty of the chief to transmit, immediately on publication, one copy of the biennial report of the bureau to each county and State officer in Indiana.

It is contended, on the part of the appellant, that the chief of the Indiana Bureau of Statistics is a State officer, and that the law is unconstitutional in so far as it provides for the election of such officer by the General Assembly, and that the election held by the General Assembly at which the appellee was elected was illegal and void, and gave the appellee no title to the office; and that there was a vacancy in such office at the time the relator was appointed, which the Governor had the right to fill by appointment; which he did by the appointment of the relator, Worrell.

On the other hand, it is contended by the appellee that it is a legislative office, which the General Assembly had a right to fill by election, as prescribed by the law, and that although it may not be a legislative office, and is in fact a State office, yet the General Assembly had the right to fill such office by an election, as provided for by the act of 1883; that the Legislature has the right to create a State office and prescribe by law that the General Assembly shall elect such officer.

It is admitted, and must be, that the Legislature of the State may exercise appointing power, and select officers to fill the various offices which are peculiarly related to and

connected with the exercise of its constitutional functions, and such as are necessary for it to appoint to maintain its independent existence, and this we think the limit of the appointing power of the Legislature unless additional has been given by the express provisions of the Constitution, or acquired by construction under the rules of practical exposition.

We have therefore set forth in detail the provisions of the various acts relating to the object of creating the Indiana Bureau of Statistics, and the duties and powers of the chief of such bureau, and from such provisions we are to determine whether or not such officer is one which the Legislature has the right to elect.

It is contended by counsel for appellee that the object of this bureau is for the purpose of having collected and systematized such facts pertaining to labor and kindred subjects as might become important to direct the General Assembly in enacting wise legislation, and to that end they require that the chief of such bureau shall make a full and complete detailed report of his investigation to them, and that he shall make such recommendations with reference thereto as he may deem proper.

We can not agree with this theory. The first section of the act of 1879 provides that the chief shall report both to the Governor and the Legislature, and that section has not been amended or repealed, and is still in force.

The act of 1889 makes it the duty of the chief to send one copy of his report, as soon as printed, to each county and State officer. If we are to limit the object and purpose of the bureau to furnishing information to those to whom the chief is to report or furnish copies of the report, the object is as much to furnish information for the Governor and the individual State and county officers of the State as to furnish information to the Legislature, for they are each and all to be furnished with a report and the information it contains.

We think the object and purpose of creating the bureau, and putting an officer at its head, is much broader than that

contended for by counsel for appellee. It is to gather and systematize statistical information and details relating to agriculture, manufacturing, mining, commerce, education, labor, social and sanitary condition, vital statistics, marriages and deaths, and the prosperity and productive industry of the people of the State, that all the people of the State may know the facts gathered relating to the resources of the State, the condition of its laborers, its social and sanitary condition, and as to the education and prosperity of its citizens, for the good of the people of the State, and the development of its industries and good of its citizens. To this end the reports are required to be distributed so as to be accessible to all; and not only that it may be known by, and the information furnished to, the citizens of the State, but that the people of other States and the world may know in regard to the products of the State, and of our mining, manufacturing and educational interests, the condition of our laborers and our social and sanitary condition, and to this end it is provided for a liberal distribution of the reports of the chief, that one may be placed in the hands of every State and county officer. When the people are put in possession of this information, the legislators, who are of the people, selected by and come from the people, at frequent intervals, are possessed of this information, and prepared to direct wise legislation. When all the people are possessed of this information, it is far better than if but the legislators were informed of it. If the information disclosed such a state of facts as suggested and required legislation, it would provoke discussion as to the proper legislation to remedy any evil which might exist within the State, remedies would be suggested and legislators selected whose views corresponded with the views of the majority, and thus the will of the majority of the people of the State would be expressed by a law prescribing a remedy for the evil, if one existed, or for the betterment of the people or development of the industries of the State.

Fortunately, in passing upon this question, we are not left

to our own views alone in determining the question as to whether this is a legislative office or not, with the Legislature claiming it as such, and the Governor claiming that it is not, for we have evidence in the law itself that the Legislature which enacted the first act upon the subject creating the bureau, and providing for a chief, did not regard it as a legislative office. The act of 1879 provided that the Governor should appoint the chief, therefore we think it must be conceded that the Legislature creating the office did not regard it as a legislative office; if it had been so regarded by that Legislature it would have elected the officer. Certainly the legislative department would not call upon another department of the State government to appoint or elect an officer that was within its prerogative to elect; indeed, it seems to us that there can be no reasonable doubt on this question, for the nature of the office, the information to be gathered, is for the benefit of the whole people of the State, the duties of the office relate to and affect all the people of the State; the officer is given power to inquire into the business, the finances and the social relations of all the people; he is given almost unlimited power to inquire into nearly all matters affecting the interests of the people, and may compel all to answer his questions and furnish the information desired. The officer's salary is paid out of the general funds of the State, and appropriations are made from the general funds to pay the expense of gathering the information. The officer is in no way connected with the exercise of legislative functions, nor is his appointment necessary for the purpose of the Legislature maintaining its independent existence, nor has the Legislature acquired the right to appoint such officer by a construction of the Constitution under the rule of practical exposition.

In view of the object of the law and the nature of the office, it is unquestionably a State office, and we find upon examination of the laws of other States that offices of this character are not regarded by the Legislatures of other States as

in any sense legislative offices, coming within the prerogative of the Legislature to elect the officers.

Having reached this conclusion, the next question for determination is the right of the Legislature under the Constitution to create a State office and fill it by the General Assembly electing the officer.

This brings us to the consideration of the power of the General Assembly. This must be determined by some general principles.

Judge Cooley, in his work on Constitutional Limitations (5th ed.), p. 36, says: " The theory of our political system is that the ultimate sovereignty is in the people, from whom springs all legitimate authority."

Story, in his work on the Constitution, section 208, says: "The State, by which we mean the people composing the State, may divide its sovereign powers among various functionaries, and each in the limited sense would be sovereign in respect to the powers confided to each, and dependent in all other cases. Strictly speaking, in our republican forms of government the absolute sovereignty of the nation is in the people of the nation; and the residuary sovereignty of each State, not granted to any of its public functionaries, is in the people of the State."

Judge Cooley, in the same work, at page 47, says: " In considering State Constitutions we must not commit the mistake of supposing that, because individual rights are guarded and protected by them, they must also be considered as owing their origin to them. These instruments measure the powers of the rulers, but they do not measure the rights of the governed." Again, on the same page, he says: " It grants no rights to the people, but is the creature of their power, the instrument of their convenience." And again he says: "A written Constitution is in every instance a limitation upon the powers of government in the hands of agents; for there never was a written republican Constitution which delegated to functionaries all the latent powers which lie

dormant in every nation, and are boundless in extent and incapable of definition."

On page 208 of the same work Judge Cooley says: " It does not follow, however, that in every case the courts, before they can set aside a law as invalid, must be able to find in the Constitution some specific inhibition which has been disregarded, or some express command which has been disobeyed. Prohibitions are only important where they are in the nature of exceptions to a general grant of power; and if the authority to do an act has not been granted by the sovereign to its representative, it can not be necessary to prohibit its being done."

From these general and well settled principles laid down by Judges Cooley and Story there logically flows, and they inevitably and conclusively establish, the principle that before the adoption of the constitution, and delegating power to the various departments of government, there existed in the sovereign, the people of the States, all power, including the right to elect their own officers and rulers, and unless they delegated the power to create an office and elect the officer to some department of the State government that power still rests with the people, and the right to create the office is one thing, and the right to elect the officer another; and if they have delegated power to create the office and not to elect the officer they, the people, still have the right to elect.

It is conceded that the right to create the office is delegated to the Legislature, and we need not consider that question. It is denied by the appellant that the General Assembly has the right to elect a State officer, and it is contended that the Governor has the right to appoint, at least, when there is a vacancy, and that there was a vacancy in this case. On the other hand, it is contended by the appellee that the General Assembly has the right to elect a State officer, and that such power is conferred by section 1, article 15, of the State Constitution, which is as follows: "All officers whose appointments are not otherwise provided for in this Consti-

tution shall be chosen in such manner as now is or hereafter may be prescribed by law." If such power is conferred at all it is by this section, and we need not consider any other section or clause of the Constitution except such as is necessary to aid in the interpretation and construction of this section. A construction has been given to this section of the Constitution adversely to the theory of counsel for appellee by decisions of this court in which a majority of the judges of the court concurred. *State, ex rel. Jameson,* v. *Denny,* 118 Ind. 382 ; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426 ; *State, ex rel. Holt,* v. *Denny,* 118 Ind. 449.

Holding that giving the Legislature power to prescribe by law the manner of electing an officer does not confer the power to elect, and that there is a manifest distinction between providing the mode of doing a thing and doing the thing itself, these opinions are supported by the cases of *State, ex rel.,* v. *Kennon,* 7 Ohio St. 546 ; and *Jones* v. *Perry,* 10 Yerger, 59 (30 Am. Dec. 430).

The conclusion reached in these cases, we think, is correct, and gives the proper construction to this section of the Constitution. In this connection it is right to consider and determine what is the proper method of electing State officers, and who have the right to elect. It will be seen, by reference to the old Constitution, that representatives and senators were elected by the people ; also, county and township officers, and the Governor and Lieutenant Governor were elected by the people. All other State executive officers were elected by joint vote of both houses of the General Assembly, as were also the president judges of the circuit courts, and the judges of the Supreme Court were appointed by the Governor by and with the advice of the senate, and they appointed the clerk of this court. R. S. 1843, pp. 97, 100, 101 and 102. The Constitution also provided for the election of other officers by the vote of both houses.

By the new Constitution the people changed the system of electing State officers, so as to revest in the people of the

State at large the right to vote for and elect all administrative State officers provided for in the Constitution, and all the judges and the clerk of the Supreme Court; and also provided for the election of the superintendent of public instruction.

In the first article and first section of the new Constitution they declare " that all power is inherent in the people."

By section 1, article 3, they divide the powers of the government into three separate departments, " the legislative, the executive, including the administrative, and the judicial," and declare and say that " no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

By section 1, article 4, it is declared that " The legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives," and by section 16, same article, it is declared that " Each House shall have all powers necessary for a branch of the legislative department of a free and independent State." This is all the general power granted to this department, and it is nowhere provided in what manner an officer, to fill an office created by law, shall be elected. The Constitution by its terms vests the executive power of the State in the Governor, and it specifically authorizes the Governor to fill vacancies in State offices. There is no provision in the Constitution declaring by whom a State officer shall be chosen or elected to a State office created by law. It seems manifest by the change made in the Constitution taking away the power granted by the old Constitution to the General Assembly to elect State officers and the people retaining the power to elect all State officers created by the new Constitution, and providing that the people should elect them, and granting to no department of government the right to elect officers to fill the State offices which might thereafter be created by law, that one of the

principal objects in revising the Constitution was to take from the legislative and executive departments of the government all power to fill State offices by the appointment or election of such officers. In the Constitutional Debates, volume 2, at page 1238, we find Mr. Holman, who was a member of the convention, saying, in a speech : "It will be recollected that we do not intend to confer upon the Legislature the power of appointing. There may possibly be two or three offices the appointment to which will be vested in the Legislature." And nowhere do we find this assertion controverted. We also find in the address issued by that convention to the electors of the State, setting forth the changes proposed, a statement that "The secretary of state, auditor of state, and treasurer of state, who were elected under the old Constitution by the Legislature, are now elected by the people." There is also the following statement in regard to the election of judges : "The Supreme and circuit judges, heretofore chosen, the former by appointment of the Governor, confirmed by the Senate, and the latter by joint vote of both Houses, are, by the new Constitution, elected by the people," and it is stated that "there is to be elected by the people a prosecuting attorney for each judicial circuit." It seems to be evident that if the office now under consideration had been created by the Constitution the mode of electing the officer would have been declared to be by election by the people. No greater reasons exist why the secretary of state or the superintendent of public instruction should be elected by the people than the officer of chief of the bureau of statistics.

The conclusion we unhesitatingly reach is, that under the new Constitution, which took effect November 1st, 1851, the power to elect State officers whose duties are general, and such as the duties of the chief of the Indiana Bureau of Statistics, remains with the people, and that the proper interpretation and construction to be given section 1, article 15, is that State officers shall be chosen by the electors of the

State in such manner as may be prescribed by law, and that it is the duty of the Legislature in creating a State office to fix the term of the office and provide for the election of the officer by the people.

On examination we find the construction we have given the Constitution supported by the practical interpretation given to it until within a very recent date. Soon after the adoption of the Constitution the office of attorney general was created, and it was provided by law that the officer should be elected by the electors of the State. True, the act provided that the General Assembly should elect to fill the vacancy existing until an election by the people, but the General Assembly adjourned without holding an election and electing such officer as the act provided. The fair inference is, that on more mature deliberation after the passage of the act they determined that they had no power to elect, and hence adjourned without doing so.

The Constitution provides that "The General Assembly shall provide, by law, for the speedy publication of the decisions of the Supreme Court," section 6, article 7, and immediately after the adoption of the Constitution the Legislature created the office of reporter of the Supreme Court, and provided for the election of the reporter by the people. Likewise district offices were created, courts of common pleas were established, and the offices of judges of the courts of common pleas and district prosecuting attorneys were created, and it was provided by law that the judges and prosecutors should be elected by the electors of the respective districts.

Without setting out the various provisions in the Constitution vesting appointing power in the Governor of the State, it is our conclusion that the right to fill the vacancies in all such offices is vested in the Governor, the executive officer of the State.

It follows, therefore, that the act of 1883, amending section 2 of the act of 1879, providing for the election of the chief of the Indiana Bureau of Statistics by the General As-

sembly, is unconstitutional and void, and the act of 1879, attempted to be amended, is still in force.

Section 2 of the act of 1879 provides that the Governor shall appoint the chief. In so far as it provides for the appointment by the Governor it is simply declaratory of the Constitution, and gives to the Governor no power that he did not possess by virtue of the Constitution, as by it he had power to fill the vacancy until an election by the people, and the Legislature could give the Governor no greater authority, but this section is valid, and operates to fix the tenure of the office. The force and effect of this section is to fix the tenure of the office at two years. See 3 Am. and Eng. Encyc. of Law, p. 674, note 1; *Newland* v. *Marsh*, 19 Ill. 376; *Iowa, etc.*, v. *Webster County*, 21 Iowa, 221; *Wray* v. *Rhinelander*, 52 Barb. 533; *Bigelow* v. *West Wis. R. W. Co.*, 27 Wis. 478; *Dow* v. *Norris*, 4 N. H. 16.

Though the law creating the office in question does not provide for the election of the officer by the people, and is silent on that subject, and there is no provision of the statute relating to and providing for the election of this particular officer, yet we think the law creates the office, and when created the people have the right to elect the officer. It would seem that they would have that right, and might elect such officer at a general State election even if there were no statute in force governing general elections that contemplated the election of such officer. The people can not be deprived of their right to elect an officer by the neglect or refusal of the Legislature to discharge its duty. But we are not called upon to decide that question, as the general election law clearly authorizes the election of such officer.

Section 4678, R. S. 1881, reads as follows: " Section 1. A general election shall be held on the first Tuesday after the first Monday in November in the year one thousand eight hundred and eighty-two, and biennially thereafter on the same day, at which election all existing vacancies in office, and all offices, the terms of which will expire before the next

The State, *ex rel.* Worrell, *v.* Peelle.

general election thereafter, shall be filled, unless otherwise provided by law."

This statute is broad enough, and it was intended to fill all offices which would become vacant before the next general election. The appointee of the Governor would hold until his successor was elected at the next general election after he was appointed and until his successor had qualified. There can be no question but that the people have the right to elect the chief of the bureau of statistics at the general State election provided for by section 4678, R. S. 1881.

In determining the right of the people to elect a State officer and the appointing power of the Governor, we limit what we have said to offices of the nature and character of the one in question. There may be a class of officers, and probably is, whose duties are not general, or relate to and are calculated to aid the Governor in the execution of the laws, or police officers whom he would have the right to appoint, but in regard to his right to appoint such officers we decide nothing.

. The conclusion we reach is that the General Assembly had no power to elect the appellee to the office in question, and that such election was void; that the information alleges there was a vacancy in the office; that the appellee usurped the office, and illegally held possession of it; that the Governor appointed the relator, and he was eligible and is entitled to the office.

The court below erred in sustaining the demurrer to the information.

The judgment is reversed, at the costs of the appellee, and the cause remanded to the court below, with instructions to overrule the demurrer, and for further proceedings in accordance with this opinion.

Filed Nov. 7, 1889; petition for a rehearing overruled Feb. 4, 1890.

DISSENTING OPINION.

ELLIOTT, C. J.—I dissent from the prevailing opinion, for the reason that I believe that the Legislature has power to

establish a bureau of statistics, and that, having the power to do this, it has, also, the right to select the means and agencies which it deems necessary to carry into effect the law it has enacted establishing that bureau. I have stated my views in the opinion in the case of *State, ex rel.*, v. *Hyde, ante*, p. 20, and I do not deem it necessary to again discuss the question.

MITCHELL, J., concurs with ELLIOTT, C. J.

Filed Nov. 7, 1889.