The State, *ex rel.* Collett, *v.* Gorby.

No. 15,193.

THE STATE, EX REL. COLLETT, *v.* GORBY.

CONSTITUTIONAL LAW.— *Appointment to Office.—Constitution, Article 15, Section 1, Construed.—Administrative State Officers.*—Section 1, Article 15 of the Constitution as follows: " All officers whose appointments are not otherwise provided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law," does not apply to any administrative State office in existence at the time of its adoption, administrative State officers, by the terms of the Constitution, being made elective by the people; but it does apply to most of the statutory State offices, such as the office of mine inspector, oil inspector, trustees of benevolent institutions, etc.

SAME.—*Mine Inspector, Oil Inspector, etc.—Manner of Selection.*—The General Assembly in the creation of the above last-named, and kindred offices, may provide by law that they shall be filled either by election or by appointment; which appointment, if the law so directs, may be made by the Governor, or by an administrative State officer.

SAME.—*State Office.—Creation of.—Appointment of Officer.*—The General Assembly may not create an administrative State office and provide for filling the same by appointment indefinitely, the provisions of section 1, article 15, of the Constitution, *supra*, having no application to this class of State officers.

SAME.—*Director of Department of Geology.—Governor may Fill Vacancy.—General Election.*—Where an office is created by law, to be filled immediately, no legitimate mode being provided for filling the same, it is vacant on the taking effect of the law, and the Governor may fill such vacancy by appointment. So, the Legislature having created the office of director of the department of geology, an administrative State office, but having no power to fill it, the office was vacant, and the Governor had the right to fill the vacancy until a general election by the people.

SAME.—*Scientific Skill.—Failure of Information to Aver.*—An information by the appellant, an appointee of the Governor, seeking to recover possession of the office of director of the department of geology, is not bad because of a failure to aver that the appellant is skilled in the science of geology, it being averred in general terms that the appellant possesses all the necessary qualifications for the office in controversy.

SAME.—*Law's Validity.—Who May not Question.*—The parties to the suit to recover possession of the office can not question the validity of the law creating it, since they both claim title under it.

VOL. 122.—2

| 122 | 17 |
| 129 | 306 |
| 122 | 17 |
| 133 | 548 |
| 132 | 659 |
| 122 | 17 |
| 137 | 565 |
| 122 | 17 |
| 141 | 624 |
| 141 | 682 |
| 122 | 17 |
| 145 | 594 |
| 122 | 17 |
| 149 | 207 |
| 150 | 464 |
| 122 | 17 |
| 153 | 336 |
| 122 | 17 |
| 158 | 152 |
| 122 | 17 |
| 160 | 218 |

The State, *ex rel.* Collett, *v.* Gorby.

SAME.—*Statute— Unconstitutional Portion Stricken Out.—Enforcement of Remainder.*—With the provision relating to the manner of the election of the director of the department of geology stricken out of the law, the remainder is complete, capable of being executed according to the intention of the Legislature, and therefore will stand as law.

MITCHELL, C. J., and ELLIOTT, J., dissent.

From the Dearborn Circuit Court.

*L. T. Michener,* Attorney General, *A. C. Harris, G. M. Roberts, J. K. Thompson, A. J. Beveridge, F. H. Blacklidge* and *J. H. Gillett,* for appellant.

*J. E. McCullough, L. P. Harlan* and *S. J. Peelle,* for appellee.

COFFEY, J.—The information in this case charges, substantially, that the relator, John Collett, was duly appointed and commissioned by the Governor of the State of Indiana, on the 9th day of May, 1889, director of the department of geology and natural resources for the State of Indiana ; that at that time the office had no incumbent except as hereinafter set out ; that on the 11th day of May, 1889, he took and subscribed the oath of office on the back of said commission, as required by law, and on said day deposited a duly certified copy of said oath in the office of the Secretary of the State of Indiana ; that in all other respects, relator at the time last mentioned duly qualified for said office ; that the relator is now, and for many years last past has been, a citizen of the United States of America and of the State of Indiana; that he is over the age of twenty-one years, to wit : of the age of sixty years ; that the relator is now, and for thirty-nine years last past has been, a legal voter in Eugene township, Vermillion county, and State of Indiana ; that he is not, and has not been for more than ten years, a member of the General Assembly of said State, nor has he held any office since the 26th day of April, 1885, nor was he, at the time of said appointment, or at any time since, in any way disqualified from being appointed to, or holding said office of director of the depart-

ment of geology and natural resources for the State of Indiana; but, on the contrary, he was at the time of said appointment, ever since has been, and still is, eligible to said office ; that the above-named defendant, on the —— day of March, A. D. 1889, entered into and now usurps, unlawfully holds and exercises the office of director of the department of geology and natural resources for the State of Indiana, by virtue of a pretended election thereto by the General Assembly of Indiana at its last session ; that said defendant is, and during all the time last aforesaid has been, without any other claim or title to said office ; that on the 14th day of May, A. D. 1889, relator demanded the possession of said office from defendant, but he refused to surrender it.   Wherefore, etc.

A demurrer to this information, for want of facts sufficient to constitute a cause of action, was sustained by the circuit court, and the appellee had judgment for costs.   The assignment of error calls in question the correctness of this ruling.

Waiving all questions of a technical character, this information and the demurrer thereto raises and requires a decision of the question of the legal mode of selecting the officer therein named, as well as the authority of the General Assembly of the State to make such selection.   If the General Assembly of the State possesses the power to elect the incumbent of the office in question, it follows that the court did not err in sustaining the demurrer to the information, for there was no vacancy in the office at the time the relator was appointed and commissioned by the Governor of the State.   In considering and passing upon this question it may not be unprofitable to review, briefly, the recent adjudications of this court upon the subject of the legislative power over appointments, and, as a basis for settling the question now before us, to definitely ascertain and settle the grounds upon which they rest.

In the case of *State, ex rel. Jameson,* v. *Denny,* 118 Ind. 382, it was held, that the General Assembly had no

power to elect or appoint the members of a board of public works and officers for the cities named in the act of March 9, 1889.

That decision rests upon the grounds, as therein expressly stated :

*First.* That so much of the act as attempted to confer on the General Assembly the duty of electing or appointing the individual members of that board, sought to confer on it executive or administrative functions which, under the constitution, it was forbidden to exercise ; and,

*Second.* That the people had the right to local self-government, including the right to select their own local officers to manage their own purely local affairs, and that by the adoption of our present Constitution they did not surrender such right.

In the case of *City of Evansville* v. *State, ex rel.,* 118 Ind. 426, and in the case of *State, ex rel. Holt,* v. *Denny,* 118 Ind. 449, it was held that the General Assembly does not possess the power to elect or appoint the individual members of a metropolitan board of police and fire department provided for by an act of the General Assembly of the 7th of March, 1889. The decision in these two cases rests upon the grounds stated in the case first above cited.

In the case of *Hovey* v. *State, ex rel. Carson,* 119 Ind. 395, it was held that the General Assembly had the power to elect or appoint the trustees of the Indiana Hospital for the Insane, involved in that case. The decision rests upon the ground, as stated in the principal opinion, though not concurred in by a majority of the court, that, as the Constitution enjoins upon the Legislature the duty to make provision by law for the support and maintenance of an institution for the treatment of the insane, this is equivalent to an express grant of authority to provide for the selection of all such agents, or officers, as that body may deem necessary to accomplish the duty imposed; and that, for that reason, it

might either appoint such officers, or agents, itself, or commit the power to do so to the Governor.

The decision rests upon the further ground that the long-continued practice of the Legislature in making such appointments, and the acquiescence of the other departments of the State therein, had given to the Constitution a practical construction by which the courts were bound.

In the case of *Hovey* v. *State, ex rel. Riley*, 119 Ind. 386, it was held that the General Assembly had authority to elect or appoint the trustees of the blind asylum. The decision in that case, as stated in the opinion, rests upon the ground that such institutions are, in a sense, in the possession and under the control of the General Assembly, and that for that reason it has the power to elect or appoint agents or officers to manage them; and upon the further ground that by a long continued exercise of the right by the General Assembly to make such appointments, and the acquiescence therein of the other departments of the State, a construction had been placed upon the Constitution which the courts are bound to respect.

In the case of *State, ex rel.,* v. *Hyde*, 121 Ind. 20, and in the case of *State, ex rel.,* v. *Peelle*, 121 Ind. 495, it was held that the General Assembly did not possess the power to appoint or elect either the director of the department of geology and natural resources, or the State statistician. It was further held in those cases that under our State Constitution these officers are elective by the people, and that the Legislature could not provide by law that they should be permanently filled by appointment. The latter holding was based upon the assumption that the Legislature had created by statute two new departments of the State government, and that the incumbents of these offices are, in a sense, administrative State officers.

It is true that there is some language, inadvertently used, in the case of *State, ex rel.,* v. *Hyde, supra*, from which it could be inferred that it was the opinion of the court that

The State, *ex rel.* Collett, *v.* Gorby.

the oil inspector might be an elective office under the Constitution, but what was there said upon the subject of an elective office, was intended to apply to the office of director of the department of geology and natural resources, and must be so understood and construed.

It will thus be seen by reference to the recent decisions of this court upon the subject of legislative authority in the matter of the election or appointment to office, and an examination of the grounds upon which they rest, that there is no conflict; but on the contrary, that they constitute one harmonious whole. But however harmonious these decisions may be in relation to the power of the Legislature to appoint to office, it is plain from the dissenting opinions in the case of *State, ex rel.*, v. *Hyde, supra*, that there has arisen and now exists a sharp, irreconcilable conflict in the opinions of the individual members of the court upon that subject, such as may arise at any time upon any intricate unsettled legal proposition. Such disagreement, as we understand it, does not arise out of the conclusion to be drawn from any given premises, but arises out of an effort to agree upon the premises from which the conclusion shall be drawn. If it were agreed that an appointment to office was intrinsically the exercise of an executive or administrative function, then the conclusion would so inevitably follow from the language used in section 1, article 3, of our Constitution, that the Legislature could not appoint, except in cases where the Constitution expressly confers such power, that the controversy would be at an end. But it is not so agreed. Indeed, the majority and the minority of the court have come to directly opposite conclusions as to the nature of the appointing power conferred by our Constitution. This disagreement is greatly to be regretted, as it tends to weaken the final conclusion reached in this class of cases, but no member of the court could be expected to yield his honest convictions upon this or any other consideration. The reasons for the conclusion reached by the majority of the court upon this question are

so fully set forth in the cases of *State, ex rel. Jameson,* v. *Denny, City of Evansville* v. *State, ex rel.,* and *State, ex rel. Holt,* v. *Denny, supra,* that it would be adding unnecessarily to the length of this opinion to restate them here.

It is apparent that we could not hold in this case that the General Assembly had the power to fill the office involved here, by its own appointment, without overruling the decisions therein rendered. The conclusion in those cases was reached after a patient, careful and laborious investigation, and diligent study of all the authorities bearing upon the questions involved, and is believed to be sound in principle. Since handing down the opinions in those cases we have had no new light by which we should be guided to a different conclusion, and we know of no reason why those cases should be overruled. Following the reasoning and the conclusion reached in the cases above referred to, we have had no trouble in reaching the conclusion in this case that the General Assembly had no power to elect or appoint the appellee to the office he is now claiming.

But it is earnestly contended that the court erred in its conclusion that under the Constitution the General Assembly could not provide, by law, for filling the office here involved by appointment. It is claimed that such conclusion is in conflict with some of the provisions of the Constitution, while it renders other provisions meaningless. As we understand the argument, it is not denied that this office is, in a sense, an administrative State office, but it is contended that under the provisions of section 1, article 15, of the Constitution, the General Assembly has the right to create an administrative State office and provide, by law, that such office shall be filled by appointment.

If the contention can be maintained, that the conclusion reached by the court in the case of *State, ex rel.,* v. *Peelle, supra,* and *State, ex rel.,* v. *Hyde, supra,* is in conflict with any provision of the Constitution, of course such conclusion must fall; for it is beyond belief that the framers

of that instrument were guilty of the folly of inserting therein conflicting, or inconsistent provisions. So, if it can be shown that such conclusion renders meaningless a single word or sentence in the Constitution it must fall, for it can not be maintained that any word in an instrument of so much importance as this was not to have a potent meaning. There may well exist a difference of opinion as to the proper meaning to be given to some of the words, or sentences, there found, owing to the imperfections of our language; but there should be no dispute as to the fact that some meaning is to be attached to each and every word found therein, and we are not at liberty to attach to any word there found a meaning that will conflict with any other word, or sentence, or the well known intent of the framers of the Constitution.

The only provision of the Constitution pointed out by counsel which is supposed to be in conflict with the conclusion reached by the court in the cases above cited, is found in section 1, article 15, of the Constitution. It is claimed that under the provisions of this section the General Assembly has the power to prescribe the mode by which all statutory offices shall be filled. That section is as follows: "All officers whose *appointments* are not otherwise provided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law."

It is apparent, at first reading, that this section is not to receive a construction as broad as its terms would indicate. No provision is made in the Constitution for the *appointment* of Governor, lieutenant-governor, secretary, auditor, and treasurer of state; and yet it can not be maintained that the General Assembly has the power to prescribe by law the manner in which they shall be chosen; for the Constitution provides that they shall be *elected* by the people. It is plain, therefore, that the section does not apply to *all* officers for whose *appointment* no provision is made, as it in terms declares. It is safe to assume, then, that it has no application to such officers as are, by the terms of the Constitution, to

be elected by the people.  At least it is perfectly plain that it had no application to any administrative State office in existence at the time of its adoption ; for, by the terms of the Constitution, of which it is a part, all such officers are made elective by the people.

This section does apply to most of the statutory State offices.  Under its provisions the General Assembly has created the office of mine inspector, oil inspector, trustees of the new benevolent institutions, state prisons, reformatory institutions, state board of health, state board of charities, and many other offices, and has made the incumbents of such offices appointive, as it had the undoubted power to do.  In the creation of these, and kindred offices, it is within the power of the General Assembly to provide by law that such offices may be filled either by election or by appointment; and when to be filled by appointment it need not provide that such appointments shall be made by the Governor. Such appointments, if the law so provides, could, doubtless, be made by the Governor of the State, or by any one or more of the administrative State officers.

We are not aware that a different doctrine has ever been advanced or advocated by any one.

The contention has always been, as we understand, that the Legislature has not the power to create an office and reserve to itself the power to fill it; that it has not the power to both make and execute the law.  If the office now under consideration falls within the provisions of this section of the Constitution there can be no doubt as to the power of the General Assembly to provide that it may be filled by appointment ; and that leads us back to the question as to whether that section has any application to an administrative State office.  If a proposed construction of a statute, or of a constitutional provision, when carried to its legal and logical consequences, leads to results which could not have been within the contemplation of the makers of the law, or the framers of the constitutional provision, then such pro-

posed construction must be erroneous, for it is a fundamental principle of construction that the intention of the law-makers must prevail.

In construing a constitutional provision the first thing to be done is to ascertain, if possible, the intention of the framers of the instrument, and when that intention is ascertained no construction is to be tolerated which conflicts with such intention. Guided by this fundamental rule let us test the construction contended for by the appellee in this case. The office of the attorney general of the State, and the office of the reporter of the Supreme Court are both statutory offices, created by the General Assembly since the adoption of our present Constitution. The incumbents of such offices are both elective by the people. If the construction contended for by the appellee can be maintained, then, after any general election, if the General Assembly is of one political faith, and the attorney general and the reporter of the Supreme Court of another, the General Assembly may abolish either or both of these offices, create them anew, and fill them by appointment, thus defeating the expressed will of the people at a regular election. This, however, may not in itself be sufficient reason for rejecting the construction contended for by appellee. Section 1, article 6, of the Constitution, provides that there shall be elected by the voters of the State a secretary, an auditor and a treasurer of state, and that they shall perform such duties as may be enjoined by law. Not a single duty to be performed by these officers is prescribed by the Constitution. If the construction contended for by the appellee can be sustained, the General Assembly may create any number of State offices its discretion may dictate, under any name it may choose, make them appointive, and transfer to them the statutory duties now performed by the secretary, auditor and treasurer of state, thus rendering the constitutional provision that these administrative State officers shall be elected by the people, a dead letter. It would be difficult to find any constitutional provision ex-

The State, *ex rel.* Collett, *v.* Gorby.

pressly prohibiting the General Assembly from the creation of such offices, making them appointive, and from transferring to them the statutory duties now performed by the administrative State officers above named, and yet such a proceeding would be such a plain violation of the intention of the framers of the Constitution that no court would hesitate to declare that it did not possess such power. To permit such a construction would place it in the power of the Legislative department of the State to wholly absorb and usurp the executive and administrative department. It is immaterial whether it is usurped by the direct action of the General Assembly, as a legislative body, or whether it is done indirectly by its own appointed agents. The result in either case is the same. By the express terms of the Constitution the General Assembly is prohibited from exercising executive or administrative functions, except in cases expressly provided for by that instrument. That the General Assembly may not create an administrative State office and provide for filling the same by appointment, indefinitely, we have no hesitancy in affirming; nor do we hesitate to hold that the provisions of section 1, article 15, have no application to this class of State officers. The intention of the framers of our Constitution that this class of officers should be elected by the people is so plain that it can not be ignored; that there are but two offices of that class now in existence, not made elective by the law creating such office, is, perhaps, true, but this furnishes no reason for not referring them to the proper constituency for election. The officer now in question has charge of a separate and distinct department of the State government and is charged, by law, with the administration of that department, and is, in that sense, as much an administrative State officer as the superintendent of public instruction. The fact that such department was created by statute, and not by the Constitution, we think, does not change the character of the office.

It is also urged that in the absence of some express statu-

tory, or constitutional provision, the Governor of the State can not fill an office by appointment.

We have no doubt that the General Assembly may, in certain cases, create an office, and provide by law that it shall remain vacant until some future time; but such is not the case before us. When an office is created, to be filled immediately, the presumption must be indulged that the authority creating such office was satisfied that there was a public necessity for the office. If no legitimate mode is provided for filling the same, it is vacant the moment the law takes effect by which it is created. The Constitution provides that the Governor shall see to it that the laws are faithfully executed. The law abhors a vacancy in a necessary office; and under this constitutional provision, we think, the Governor not only has the right to fill all vacancies in State offices, where no other legal mode is prescribed, but that it is his duty to do so, to the end that the law prescribing the duties of the incumbent of the office may be faithfully executed. If it were not so the public would suffer, and the Governor would be without the power of performing this constitutional obligation.

Again: it is argued that the information in this case is defective, in that it fails to aver that the appellant is skilled in the science of geology. We can not conceive of an issue formed, to be tried by a court or jury, involving the extent of an officer's information and acquirements in the sciences as affecting his qualifications for office. We think that this is a question to be determined by the constituency from which the officer derives his title, and can not be made the subject of litigation in court. However this may be, it is averred in general terms that the appellant possesses all the necessary qualifications for the office in controversy.

It is also urged by the appellee that the law under which he and the appellant both claim the office in dispute, is unconstitutional, in that it embraces more than one subject and matters properly connected therewith. We do not think the

The State, *ex rel.* Collett, *v.* Gorby.

parties to this suit stand in a situation to call in question the validity of the law creating the office involved. Each of the parties is treating the law as a valid enactment, and each makes his title to the office he is claiming through the law. Under such circumstances we do not feel called upon to go beyond the controversy between the parties to the suit to look for defects in the law which may render it invalid.

Finally it is contended that if the provision of the statute which reserves to the General Assembly the power to fill the office created thereby falls, the whole act must fall with it, for the reason that we can not presume the General Assembly would have passed the law, had it not believed it possessed the power to elect the incumbent.

Such an assumption can only be maintained upon the supposition that the General Assembly created the office in question for the sole purpose of providing a place for some particular partisan or individual. We can not attribute to a co-ordinate branch of the government an object so unworthy of it and of its well known duties. We must attribute to that body the belief that the office in question was demanded by the public necessity, and that it was created for that reason, without reference to the constituency which should choose the person by whom it should be administered. Striking from the law the provision reserving to the General Assembly the power to elect the incumbent to the office thereby created, it leaves a perfect law, capable of being executed according to the intention of the Legislature, as therein expressed. Under such circumstances that which is unconstitutional will be rejected, and the remainder will stand as the law. *State, ex rel.,* v. *Blend,* 121 Ind. 514, and authorities there cited.

We have thus gone through with an examination of all the questions discussed by counsel, and have given them a careful and anxious consideration. In doing so we have been fully impressed with the importance of the question to be decided, as well as ever mindful that mistakes may inter-

vene because of the imperfections of human reason. We have never for a moment lost sight of the forcible and eloquent argument found in the appellee's able brief to the effect that one of the objects sought by the framers of our Constitution was certainty in the mode of selecting the people's public servants.

If we have succeeded in demonstrating that it was the intention of the framers of our Constitution to deprive the Legislature of the power to create and fill offices, we feel that we have done much to secure that certainty which counsel so earnestly advocate. With no power to fill the offices, the motive to frequent changes in the mode of filling them is at an end, and thus we secure certainty.

From what we have said it necessarily follows that the General Assembly had no power to appoint or elect the appellee to the office he now claims, and that the Governor of the State had the right to fill the vacancy therein by the appointment of the appellant.

The court erred in sustaining the demurrer to the information in this cause, for which the judgment of the circuit court is reversed, with instructions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

Filed Feb. 4, 1890.

## DISSENTING OPINIONS.

ELLIOTT, J.—I dissent from the opinion of the majority for the reasons given in the dissenting opinions in the case of *State, ex rel.,* v. *Hyde,* 121 Ind. 20. I do not think it necessary to overrule the case of *State, ex rel. Holt,* v. *Denny,* 118 Ind. 449, or that of *State, ex rel. Jameson,* v. *Denny,* 118 Ind. 382, to decide this case, either for the appellant or for the appellee, for those cases rest principally upon the ground that the inhabitants of a locality can not be deprived of the right of local self-government, and no such question is involved in the present case. To my mind those cases are so widely differ-

ent from the present that it is inconceivable that the questions here involved can be controlled by the conclusions reached in the cases referred to, although it is, perhaps, true that some of the reasoning and illustrations of the judges who wrote the opinions in those cases may support the conclusion declared in the prevailing opinion; but, however this may be, it is perfectly clear that the judgment of the court does not.

MITCHELL, C. J., dissents entirely from the reasoning and the conclusions reached by the court.

Filed Feb. 4, 1890.