No. 9131.

GRAY, GOVERNOR, ET AL. *v.* THE STATE, EX REL. COGHLEN.

STATE BONDS.—*Internal Improvement Loan.—Statute Construed.—Mandate.—Discretion.*—The act of December 12th, 1872, Acts 1872, p. 11, authorizing and empowering the Governor, Attorney General, Secretary and Treasurer of State to redeem certain bonds of the State, issued prior to 1841, is mandatory upon such officers to pay such bonds and coupons attached, and vested no discretionary power in them whether they should pay them or not, after they had determined in favor of the genuineness and validity of the bonds presented; and a writ of mandate will lie against them to enforce the performance of the duties therein prescribed.

SAME.—*When Permissive Words of Statute Construed as Mandatory.*—Even though the words of a statute are permissive merely, where public interests and rights are concerned, and where the public or third persons have claims *de jure* that the power should be exercised, such words will be construed as mandatory.

SAME.—*Governor of State.—Executive Power.*—A power or authority vested by the Legislature in the Governor, together with other officers or persons, in which the latter have an equal voice with him, can not be executive, as he alone is vested with the executive power of the State. Nor can any duty which he is by law required to perform in connection with others, in which they have an equal voice with him, be an executive duty.

SAME.—*Duties of Officers Ministerial.*—The duties to be performed by such officers, save that of determining the genuineness of the bonds and coupons presented for redemption, are purely ministerial.

SAME.—*When Mandate will Lie against Governor.*—A writ of mandate will lie against the Governor of this State to enforce the performance of a ministerial duty not resting in his discretion.

SAME.—*Ministerial Act Defined.*—A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done.

SAME.—*Interest on Bond and Coupon after Maturity.*—Under said act, the holder of a bond provided for therein is entitled to interest on such bond, and the coupons attached, after maturity, the interest accruing thereon after maturity being as much a part of the debt as the original principal, and each coupon after maturity becoming a principal debt entitled to draw interest.

SAME.—*Statute Authorizes Payment of Interest.*—The language of said act is broad enough to authorize the officers named therein to pay the interest on the bonds and coupons as well as on the principal.

SAME.—*Power of Officers to Stop Interest by Resolution.—Tender.*—A resolution by such officers, that they would not allow interest on such bonds after a certain date, they not being· payable at the State treasury, could not have the effect of stopping interest thereon, without some act that would amount to an offer to pay, or a tender of the funds, at the place named in such bonds for their payment.

SAME.—*Rate of Interest to be Determined by the Rate Where Payable.*—Where neither the bonds nor the coupons provide for the rate of interest after maturity, it must be determined by the rate provided by the law of the State where they are payable.

SAME.—*Repeal of Statute by Implication.*—Section 4 of said act authorizes such officers to negotiate a loan for the payment of such bonds, if necessary, and is in full force, ·and unrepealed by implication, either by section 3 of the act of March 13th. 1879, Acts 1879, p. 195, or by the act of March 27th, 1879, Acts 1879, p. 200.

From the Marion Superior Court.

*D. P. Baldwin*, Attorney General, for appellants.

*C. Baker*, *O. B. Hord*, *A. W. Hendricks* and *J. R. Wilson*, for appellee.

WORDEN, J.—This case originated in a complaint by the appellee against the Governor, Attorney General, Treasurer and Secretary of State, of the State of Indiana, for a writ of mandate.

Objection. is. made to the complaint, but as the cause was finally submitted on an agreed statement of the facts in ac-

cordance, as we think, with section 386 of the code, we deem it unnecessary to set out the complaint, or inquire into its sufficiency.

The following is the agreed statement of the facts, accompanied with the affidavit required by the statute:

"Come now the above named parties, the State of Indiana, on relation of Henry Coghlen, by Baker, Hord & Hendricks and John R. Wilson, attorneys, and the defendants by Thomas W. Woollen, Attorney General of the State of Indiana, their attorney, and by agreement submit this cause to the consideration of the court, for finding and judgment, upon the following facts, to wit: On the 1st day of July, 1836, the State of Indiana, by her agents, lawfully authorized thereunto, executed and delivered her certain negotiable bond, dated of said last named date, to J. J. Cohen & Brothers, said bond being numbered 283, whereby she promised to pay to the said J. J. Cohen & Brothers, or bearer, the sum of one thousand dollars, with interest thereon at the rate of five per cent. per annum from said date of execution to maturity, at the Merchants' Bank, in the city and State of New York, said bond maturing twenty-five years from date of same, to wit, on the 1st day of July, 1861, said interest being payable in semi-annual instalments of $25.00 each, which said semi-annual instalments of interest to maturity being put into coupon notes and attached to said bond, the same numbering fifty at the date of the execution of said bond.

"Before the maturity of said bond or any of the said coupons, the said bond and coupons were duly sold, assigned and delivered to the relator herein, Henry Coghlen, who is the present owner of said bond and forty-one coupons thereto attached, the other nine coupon notes having been paid to said Coghlen by the State of Indiana. The following are copies of said bond and the forty-one coupon notes, to wit:

" 'UNITED STATES OF AMERICA, STATE OF INDIANA.

"*Internal Improvement Loan.*

" '$1,000.        Five Per Cent. Stock.        No. 283.

" 'Under the act of the General Assembly of the State of
. Indiana, entitled "An act to provide for a general system
of internal improvement in Indiana," approved January
27th, 1836.

" '*Know all Men by these Presents*, That there is due from
the State of Indiana to J. J. Cohen & Brothers, or bearer,
the sum of one thousand dollars, bearing an interest of five
per centum per annum, from the date hereof, the first of
which interest is payable the 1st day of January next, and
thereafter semi-annually, on the 1st days of July and Janu-
ary, at the Merchants' Bank in the city of New York, on
presentation and delivery of the dividend warrant severally
hereto subjoined until payment of the principal sum, which
principal sum, being stock created in pursuance of the act of
the General Assembly aforesaid, is payable twenty-five years
from the date hereof. And, for the payment of the in-
terest and the redemption of the principal aforesaid, at the
city of New York, the faith of the State of Indiana is irre-
vocably pledged. Witness our hands at Indianapolis, this
1st day of July, 1836.

" 'JNO. SULLIVAN,

" 'SAMUEL HANNA,

" 'ISAAC COE.

" ' *Commissioners.*'

" 'Indiana Internal Improvement Loan, under the act of
January 27th, 1836. Merchants' Bank, in the city of New
York, pay to bearer twenty-five dollars, being interest on
bond No. 283, due 1st July, 1841.' "

(Here follows copies of the unpaid coupons down to and
including that payable July 1st, 1861, which need not be set
out in this opinion.)

"That on the twelfth day of December, 1872, the General

Assembly of the State of Indiana, by an act entitled 'An act to provide for the payment of sundry bonds or stocks, of the State of Indiana, issued prior to the year 1841, and declaring an emergency,' (Acts 1872, p. 11) which act was approved and took effect as a public law on said twelfth day of December, 1872, made provision for the payment of one hundred and ninety-one bonds, with coupons to the same belonging, upon the terms therein set forth.

"And it is further agreed that the bond and coupons hereinbefore set out is one of the one hundred and ninety-one bonds, with coupons, contemplated in said act aforesaid, and for which said act provides payment, and that, since the passage of said act, all the one hundred and ninety-one bonds named in its preamble have not been paid, but a number of the same remain unpaid ; that said bond and forty-one coupons belonging to the same are now due and unpaid ; that at a meeting of said officers of State before mentioned, for the purpose of taking up and redeeming certain of said bonds contemplated by said act, and in accordance with its terms, on the 2d day of May, 1879, at the office of the Governor aforesaid, in the city of Indianapolis, in the State of Indiana, said relator, by his agent, John R. Wilson, did duly present to said officers said bond and said forty-one coupons, and demand payment of said bond of a thousand dollars and said forty-one coupons of twenty-five dollars each, with interest on said bond from its maturity on the 1st day of July, 1861, to said 2d day of May, at the rate of seven per cent. per annum ; also, interest at seven per cent. per annum on said coupons from maturity to said day of presentation, the amount of the same so demanded being the following sum, to wit, $5,270.54, said rate of interest being the accustomed rate under the public law of the State of New York, where said bonds and coupons were payable ; but said agents of the State aforesaid refused to pay said sum so demanded, and, in

Gray, Governor, *et al. v.* The State, *ex rel.* Coghlen.

-furtherance and in expression of such refusal, adopted the following resolution:

" 'Resolved, That the board authorize the Auditor of State to issue his warrant on the Treasurer of State in payment of Internal Improvement Bond No. 283, as follows:

On account of principal of bond      -      -      $1,000.00
For forty-one coupons, $25 each      -      -      -      1,025.00
Interest on bond from maturity, July 1st, 1861,
  to February 13th, 1873,      -      -      -      697.00
Interest on coupons to February 13th, 1873,      -      1,329.63'

"That said board, by its resolution, offered to pay said bond and coupons, with interest on the same at the rate of six per cent. per annum, from the maturity of the same to the 13th day of February, 1873, and at no greater rate and for no longer period; said board, consisting of said officers, having, on the 13th day of February, 1873, adopted the following resolution, to wit: 'That, as the State has announced her readiness to pay the bonds by making public the law for that purpose, that interest be allowed up to February 13th, 1873, and not thereafter.'

"It is further agreed, that, at the date of the execution of said bond and coupons, and from said date to the present time, under a public law of the State of New York, in that behalf enacted, the customary or legal rate of interest on such a contract as that contained in said bond and said coupons, after maturity of the same, and in the absence of a stipulation to the contrary, is at the rate of seven dollars on the one hundred dollars. Upon which facts, if the law be with the plaintiff, judgment shall be for the plaintiff, that a mandamus issue commanding said defendants to act accordingly, and, if the law be with the defendants, judgment be accordingly."

This agreement was duly signed by the attorneys for the plaintiff, and by the Attorney General for the defendants.

On this agreement it was adjudged by the court below at

special term, "That a peremptory mandate issue herein, commanding the said defendants to take up and redeem the bond and the coupons thereto belonging, set out in the agreed statement of the facts herein; the said defendants to calculate the interest on the principal bond from its maturity, July 1st, 1861, to the time of payment, at the rate of seven (7) per cent. per annum, and calculate the interest on said coupons at the same rate from their respective dates of maturity to the time of payment; said defendants to direct. in writing the Auditor of the State of Indiana to issue his warrant on the Treasurer of the State of Indiana, in favor of the said relator, Henry Coghlen, for the payment of the said principal bond of one thousand dollars ($1,000) with. interest as aforesaid, and the said forty-one (41) coupons: of twenty-five dollars ($25) each, with interest on the same as aforesaid; said sums to be paid to the relator herein."

The judgment thus rendered at special term was affirmed at general term, and its correctness is questioned by an assignment of error in this court.

It is not necessary for the purposes of this case to advert to the act of January 27th, 1836, to provide for a general system of internal improvement, under which the bond in question was issued. It is sufficient to say that the validity of the bond is not questioned; nor is it denied that the faith of the State is pledged to its payment, with the interest. coupons.

Nor is it necessary to advert to the act of January 19th, 1846, to provide for the funded debt of the State of Indiana, and for the completion of the Wabash and Erie Canal to Evansville, and the act supplementary thereto, of January 27th, 1847, under which a large portion of the internal improvement bonds of the State theretofore issued were surrendered. Such bonds were not all surrendered; and, in 1872, the Legislature passed the following act for the payment of such as might be outstanding:.

"[Approved December 12th, 1872.]

"Whereas, There are still outstanding one hundred and ninety-one old bonds or certificates of stocks, issued by and under the authority of the laws of this State prior to the year 1841, upon some of which no interest has been paid since January, 1841, and upon others of which the interest has been settled up to July, 1868, therefore,

"Section 1. *Be it enacted by the General Assembly of the State of Indiana,* That the Governor, Attorney General, Secretary of State, and Treasurer of State, or a majority of them, be, and they are hereby authorized and empowered to take up and redeem said bonds, (with the coupons thereto belonging), mentioned in or contemplated by the preamble to this act, and for that purpose a sum of money sufficient to accomplish the object is hereby appropriated ; the sum to be drawn from the treasury, on warrants of the auditor, in such sums and at such times as the Governor, Attorney General, Secretary of State, and Treasurer of State, shall, from time to time, in writing, order or direct ; every such direction stating the amount to be drawn and the purpose for which it shall be used, and every sum thus drawn shall be applied by the Treasurer of State, under the direction of the Governor, Attorney General and Secretary of State, to the purposes for which it shall have been drawn.

"Sec. 2. No money shall be drawn from the treasury by virtue of this act over and above what may be necessary to pay and redeem one hundred and ninety-one bonds (and their coupons), such as are described in the preamble to this act, and such bonds shall be redeemed in the order of their presentation at the treasury of State for redemption : *Provided,* That no bond or coupon shall be paid or redeemed until it shall have become due and payable according to the tenor and effect thereof.

"Sec. 3. It shall be the duty of the Governor, Attorney General, Secretary of State and Treasurer of State to exer-

cise the utmost scrutiny in testing the genuineness and validity of each bond and coupon which may be presented for redemption under the provisions of this act, and no bond or coupon shall be paid or redeemed unless the same is surrendered to the Treasurer of State at the time of redemption, and the bonds and coupons so redeemed shall be preserved by the Treasurer of State, and be subject to such disposition as the General Assembly may hereafter cause to be made thereof, and the Governor, Attorney. General, Secretary of State, and Treasurer of State shall immediately, after making any redemption under this act, prepare and sign a detailed description of the bonds and coupons so redeemed, with the date of their redemption, and such description shall be filed in the office of the Auditor of State, and shall be recorded by him in some book to be provided and kept for that purpose.

"Sec. 4. If at any time there shall not be money enough in the treasury, not otherwise appropriated, to enable the officers of State, heretofore mentioned, to carry out the provisions of this act, then, and in that case, it shall be lawful for the said officers of State to negotiate and make for, and on behalf of the State, a temporary loan or loans of such sum or sums of money as may be necessary, not however, exceeding in the aggregate the sum of two hundred thousand dollars, on the best attainable terms, such loan or loans to be payable at the expiration of forty day from and after the commencement of the next succeeding session of the General Assembly.

"Sec. 5. An emergency is hereby declared to exist requiring the immediate taking effect of this act; wherefore the same shall take effect and be in force from and after its passage."

The words of the statute are, "the Governor, Attorney-General, Secretary of State, and Treasurer of State, or a

majority of them, be, and they are hereby authorized and empowered to take up and redeem said bonds," etc.

It is claimed, as we understand the argument for the appellant, that as the language of the statute is merely permissive, conferring the power and authority upon the officers mentioned, without in terms making it their duty to take up and redeem the bonds, etc., they have a discretion to do so or not, and that, therefore, mandamus will not lie against them to compel them to do so. But we are clear in the opinion, that there was no such discretion to be exercised by the officers named. It was the intention of the Legislature that the bonds should be paid, and not that they should be paid or left unpaid at the option of the officers named. This is clearly gathered from the tenor of the entire act. The appropriation of money, and the authority conferred upon the officers named to borrow money for the purposes of the act, tend to repel the idea that the Legislature intended to leave it to the option or discretion of the officers named, whether to pay the bonds or not.

The character of the legislation has much to do with the question. We can not suppose, without some very satisfactory reason, that the Legislature, while making provision for the payment of a conceded indebtedness on the part of the State, intended to leave it to the discretion of the officers named, whether the indebtedness should be paid or not.

Authorities upon the point are numerous. Where the words of a statute are permissive merely, in cases where public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power should be exercised, they will be construed as obligatory. *Bansemer* v. *Mace*, 18 Ind. 27 ; *The State, ex rel.*, v. *Buckles*, 39 Ind. 272. See also Potter's Dwarris on Statutes, 220, and Sedgwick Constr. Stat., 2d ed., p. 16, and note.

By the 3d section of the act it is made the duty of the officers named "to exercise the utmost scrutiny in testing

the genuineness and validity of each bond and coupon which may be presented for redemption under the provisions of this act." But the case is relieved from any difficulty in this respect by the agreement that the bond and coupons mentioned therein is one of the bonds with coupons contemplated in the act mentioned. The bond and coupons being conceded to be genuine, there was nothing further about which to exercise judgment, and no discretion was left to refuse payment.

It is also insisted by the appellant that the executive, legislative and judicial are co-ordinate departments of the government, neither of which can interfere with the functions of the other, and therefore that mandate will not lie against the Governor. To this point High on Extraordinary Legal Remedies, secs. 118–120, is cited. On this point it is said in 2 Dillon Corp., sec. 671 : "So where there is a duty *purely ministerial, and not discretionary,* devolved by law upon the public officers of a state, and the refusal or neglect to perform the duty affects a specific legal right, the person thereby injured may have a *mandamus.* This doctrine, under the conditions just stated, has been very generally considered to be applicable to the *executive head* of the state ; but even if sound, it should obviously be limited to cases where the right of the relator is plain and the duty of the executive clearly ministerial, and not discretionary."

In the case of *The Governor v. Nelson,* 6 Ind. 496, a mandamus was sustained against the Governor to enforce the performance of a duty not discretionary, the issuing of a commission. So in *Biddle v. Willard,* 10 Ind. 62, a demurrer to a complaint for a mandamus against the Governor, to compel the issuing of a commission, was held to have been rightfully sustained, not upon the ground that the writ would not lie, but upon other ground.

Again, in the case of *Baker v. Kirk,* 33 Ind. 517, a writ

of mandate against the Governor to compel the issuing of a commission was sustained.

Although the objection made in this case may not have been made in those above cited, still they go far to establish the proposition, that, in this State, a mandate will lie against the executive to enforce the performance of a ministerial duty, not resting in the discretion of the Governor.

But the question whether a mandate will lie against the Governor to enforce the performance of an executive duty does not arise in this case. The duty of the Governor, in connection with the other officers named in the act, is not executive. The executive power of the State is vested solely in the Governor. Constitution, art. 5, section 1.

Any power or authority vested by legislation in the Governor, together with other officers or persons, in which they are to have an equal voice with him, can not be executive, as he alone is vested with the executive power of the State. Any duty which he is by law required to perform, in connection with others, in which they have an equal voice with him, can in no sense be said to be an executive duty.

The Governor and the other officers named in the act may well be regarded as constituting a board, organized by the Legislature for the performance of certain duties; and a mandate will lie against them to enforce the performance of the duties prescribed. The duties to be performed under the act, save, perhaps, determining the genuineness of the bonds and coupons presented for redemption, were purely ministerial. A ministerial act is defined to be "one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Flournoy* v. *The City of Jeffersonville*, 17 Ind. 169, 174.

We pass now to some questions respecting the interest on

the bond and coupons after the maturity of each, respectively.

It is clear that the holder is entitled to interest on the bond and coupons after the maturity of each. The interest accruing on the bond after maturity is as much a part of the debt as the original principal; and each coupon, after maturity becomes a principal debt, entitled to draw interest. *National Bank*, etc., v. *Mechanics' National Bank*, 94 U. S. 437; *Heath* v. *Page*, 63 Pa. St. 108; 2 Daniel Neg. Instr., sec. 1,513, and note; 3 Parsons Con., 6th ed., p. 102–3; *The City of Jeffersonville* v. *Patterson*, 26 Ind. 15.

It has been questioned whether the act of the Legislature is broad enough to authorize the officers mentioned to pay the interest on the bonds and coupons, as well as the principal. But on this point we have no doubt. The language of the act is, "That the Governor," etc., "are hereby authorized and empowered to take up and redeem said bonds, with the coupons thereto belonging." It is difficult to see how the bonds and coupons could be taken up and redeemed without paying what might be due upon them for principal and interest. The language is broad enough to cover whatever might be necessary to legitimately take up and redeem the paper. We should be slow to impute to the Legislature a purpose to pay merely the principal of the indebtedness of the State, and to repudiate the interest.

The holder of the bonds and coupons being entitled to interest on the same, and there being ample power vested in the board of officers named in the act to pay the same as well as the principal, the question arises whether the interest stopped running by reason of the resolution of the board, of February 13th, 1873, "That, as the State has announced her readiness to pay the bonds by making public the law for that purpose, that interest be allowed up to February 13th, 1873, and not thereafter."

Whatever might have been the effect of the resolution

thus passed, as to the stoppage of interest, if the bonds had been made payable at the State treasury, or generally, without naming any place of payment, such was not the case here. Here the bond was specifically made payable at the city of New York. The language of the bond, after naming the Merchants' Bank in the city of New York as the place of payment, is as follows : "And for the payment of the interest" (for which the coupons were given) "and the redemption of the principal aforesaid, at the city of New York, the faith of the State of Indiana is irrevocably pledged."

Thus, by the terms of the bond, the State was to provide funds in the city of New York, and there pay it and the interest coupons. The State could not, without a breach of its contract and a violation of its plighted faith, refuse to pay them at the place named. There the creditor had a right to look for his money, and there the State, if required, must pay it, or break its contract and its faith thus irrevocably pledged.

The passing of the act providing for the payment of the bonds and coupons, and the resolution of the board above mentioned, could not have the effect of stopping interest, without some act that would amount to an offer to pay, or a tender of the funds, at the place named for payment.

The next and only remaining question, as to interest, relates to the rate to which the creditor in this case is entitled. And here we may observe that we see no reason why the State, as a debtor, should be placed in any other or different situation; as to its obligation to pay interest, than that occupied by any private debtor or other public corporation. 1 Dan. Neg. Instr., section 436 ; *Murray* v. *Charleston*, 96 U. S. 432, 445. In the case last above cited the court said: "The truth is, States and cities, when they borrow money and contract to pay it with interest, are not acting as sovereignties ; they come down to the level of ordinary individ-

nals. Their contracts have the same meaning as that of similar contracts between private persons."

Neither the bonds nor the coupons provide for the rate of interest after maturity. The rate, therefore, must be determined by law. *Holden* v. *Trust Co.*, 100 U. S. 72 ; *Burns* v. *Anderson*, 68 Ind. 202.

By what law, then, must the rate of interest be determined—that of Indiana, where the instruments were made, or that of New York, where they are to be performed? This question admits of but one answer; and that is, that the law of New York must determine the rate. In *Hunt* v. *Standart*, 15 Ind. 33, it was said by this court: "In the case of a note made in one State and payable in another, it is clear, by all the authorities, that the maker will be held liable according to the law of the place where it is payable ; as that is the place where his contract is to be performed, and he is presumed to have contracted with reference to the law of that place." See also *The City of Aurora* v. *West*, 22 Ind. 88 ; *Browning* v. *Merritt*, 61 Ind. 425.

It is a general principle, that it is the law of the place of performance, by which the mode of fulfilling the obligation is governed. Wharton on Conflict of Laws, sec. 401, and notes. In respect to interest, the same author says, at sec. 503 : "*Interest based on contract, either directly or by implication, there being no wrongful act charged.* The general import of the adjudicated cases, both in England and the United States, is that interest of this character is to be governed by the law of the place where the contract is to be performed." See cases collected in a note to the section above quoted.

This brings us to the end of the case, except as to a question as to the power of the officers to make the loan, if necessary, as provided for in the 4th section of the act above set out. It is contended by the appellants that the act to provide means for the erection of a new State House, etc.,

approved March 13th, 1879, Acts 1879, p. 195, and the act to authorize a loan to pay off the temporary loan debt, heretofore incurred, approved March 27th, 1879, Acts 1879, p. 200, repeal so much of the 4th section above noticed as authorizes a loan, and cuts off the power of the officers to make such loan.

We think, however, the question does not arise in the case. The irresistible inference from the facts agreed upon is, that there was money in the treasury, duly appropriated, sufficient to pay the relator's claim, without any loan or further loan for that purpose.

The board resolved to pay the relator's bond and coupons, but not the amount of interest to which he was entitled; also, that as the State had announced its readiness to pay the bonds, etc., no interest would be allowed after the date mentioned. All this clearly implies that there was money in the treasury for the purposes of payment.

But if a loan should be necessary to carry out the purposes of the act, and further legislation should be thought necessary, the Legislature will, doubtless, take the matter into consideration, and make such provision as they may deem proper.

There is no error in the record.

The judgment below is affirmed, with costs.

## On Petition for a Rehearing.

WORDEN, J.—A petition for a rehearing has been filed in this case by the appellants, but we are satisfied with the conclusion heretofore arrived at, upon the main points in the case, and desire to add nothing to the original opinion upon them.

But we are earnestly asked to decide the question alluded to in the original opinion, whether so much of the 4th section of the act of December 12th, 1872, as authorized a

Gray, Governor, *et al. v.* The State, *ex rel.* Coghlen.

loan to be made for the purposes specified in the act, has. not been repealed; and we have concluded to pass upon the. question.

It is not claimed that the provision authorizing the loans to be made has been repealed in express terms. But there are two subsequent statutes which, it is argued, effect such repeal. The first is the act of March 13th, 1879, Acts. 1879, p. 195, "providing means for the erection of the new State House," etc. The 1st and 2d sections of this' act provide for the assessment and collection of taxes, and the appropriation of money for the construction of the new State House; and the 3d section provides, "That no officer or officers of the State of Indiana shall borrow any money on the credit of this State: *Provided*, That the Governor, Auditor and Treasurer of State shall have power to borrow money on the credit of the State for the purpose of paying any existing loans, as such loans may fall due."

We do not think this statute operates to repeal the authority to make the loan provided for by the 4th section of the act of December 12th, 1872. It has relation to the new State House, and the design of the prohibition to borrow money was to prevent the officers of the State from borrowing money for the purposes of that building, and not to disturb the provision of the act of 1872 for making loans. to enable the State to pay the old bonds as provided for.

The other statute is that of March 27th, 1879, Acts 1879, p. 200.

We set out the 1st section of this act, on which the question depends, with the title of the act, as follows:

"AN ACT to authorize a loan to pay off the temporary loan debt, heretofore incurred.

"[SECTION 1.] *Be it enacted by the General Assembly of the State of Indiana,* That it shall be lawful for the Governor, Auditor and Treasurer of State to borrow on the credit of the State the sum of five hundred and ten thou-

sand dollars ($510,000.00) with which to pay the temporary loan of this State which falls due April 1st, 1879, and the further sum of two hundred thousand dollars ($200,000.00) with which to pay the temporary loan of this State which falls due December 1st, 1879. For the purpose of borrowing said sums of money with which to pay said debts, the Governor, Auditor and Treasurer of State may issue and sell the bonds of the State, redeemable at the pleasure of the State, after five years, and payable in ten years from the date thereof, bearing interest at the rate of five per cent. per annum, payable semi-annually. Said bonds shall not be sold for less than par value thereof, and no money shall be borrowed under this act until said debts of the State above specified as falling due April 1st, 1879, and December 1st, 1879, shall have severally become due. When the money borrowed, under the provision of this act, shall have been paid into the State treasury, it shall be applied to the payment of the said debts of the State above specified. And no money shall be borrowed on the credit of the State, except to pay the above specified debts of the State, as provided in this act.''

The words of the closing portion of the above section, ''And no money shall be borrowed on the credit of the State except to pay the above specified debts of the State, as provided in this act,'' taken in their natural sense and without restriction, seem to be irreconcilable with the power to make the loans provided for by the 4th section of the act of 1872.

But we do not find it necessary to determine, as a mere matter of construction, whether the words should bear an unrestricted sense, or be regarded as a prohibition only to borrow money for the purposes specified in that act, except as therein provided for. If the words should be construed in an unrestricted sense, they would be wholly inconsistent with the power to make the loans provided for by the 4th section of the act of 1872, and would, by implication, repeal so

much of that section as authorizes such loans.  Now, the question arises whether the title to the act is broad enough to cover the repeal of so much of section 4 of the act of 1872 as authorizes the loans to be made.  If such repeal could not have been effected under the title, directly and by express terms, it would not have been effected by implication.  What the Legislature could not have done expressly, it could not have done impliedly.

The title to the act is, "An act to authorize a loan to pay off the temporary loan debt, heretofore incurred."

This title does not embrace the subject of the old bonds, for the payment of which provision is made by the act of 1872 ; nor are the old bonds, or their payment, or the power to make loans for their payment, properly connected with the subject expressed in the title.  The subject expressed in the title is not the debts of the State in general, but is confined to the "temporary loan debt."  See *The State* v. *Bowers*, 14 Ind. 195, and cases there cited, and *Shoemaker* v. *Smith*, 37 Ind. 122.

This case very well illustrates the wisdom of the constitutional provision that "Every act shall embrace but one subject and matters properly connected therewith ; which subject shall be expressed in the title."

No person, on hearing the title stated or read, would suspect that the law contained anything on the subject of the old bonds ; much less that it repealed the provision authorizing loans for their payment.  A construction that would make the prohibition to borrow money operate as an implied repeal of so much of the 4th section of the act of 1872 as authorizes the loans, would make the prohibitory provision unconstitutional.  We can not, therefore, give it such construction, but must hold that it works no such implied repeal.  Our conclusion is that the 4th section above mentioned is in full force and unrepealed.

The petition for a rehearing is overruled.