Filed Dec. 21, 1894.

———————◆———————

No. 17,617.

## French v. The State, ex rel. Harley.

Constitutional Law.—*Board to Appoint Prison Directors.*—*Act of 1895.*—The act of March 7th, 1895, constituting the Governor, Auditor of State, Treasurer of State, Secretary of State and Attorney-General, a board for the selection of prison directors is not unconstitutional.

Same.—*Construction.*—*Article 15, Section 1.*—"*Manner.*"—The word "manner," as used in article 15, section 1, of the State constitution, means the person or functionary to make the appointment.

French *v*. The State, *ex rel*. Harley.

SAME.—*Board to Appoint Prison Directors.—Associating Executive with Administrative Officers.*—Not only is there no expressed inhibition against the association of the Governor with administrative State officers, in the discharge of any duty not involving powers and privileges delegated by the constitution to either alone, or to some other department of the government, but such association is proper and within the spirit of the provisions of the constitution: article 3, section 1; article 5, section 15; article 5, section 16.

From the LaPorte Circuit Court.

*G. V. Menzies* and *J. R. Wilson*, for appellant.

*W. A. Ketcham*, Attorney-General, and *M. Moores*, for appellee.

HACKNEY, J.—On the 12th day of March, 1895, the Governor appointed and commissioned Henry A. Barnhart, Munford D. Yontz and Henry A. Root, members of the board of prison directors for the prison north of the State of Indiana. After taking an oath of office and executing bonds, the gentlemen named, organized as such board, and on the 19th day of March, 1895, selected and appointed appellant to the position of warden of said prison. The appellant qualified, gave bond and continued in the possession and discharge of the duties of said position, he having served in said position the two years immediately preceding said appointment. By the second section of the Act of the General Assembly of March 7, 1895, the Governor, auditor, treasurer, secretary of State and attorney-general were constituted a board for the selection of prison directors. That board, on the 12th day of March, 1895, appointed Enos H. Nebeker, Robert S. Foster and Henry VanVoorst as members of the board of prison directors for said northern prison, and, after qualifying and giving bonds and taking an oath of office, they organized as the board of prison directors, and, on the 19th day of March, 1895, appointed the relator, Charles Har-

ley, as warden for said prison. The relator having qualified and given bond, demanded from the appellant the position, books and records of such warden, and the appellant having refused said demand, the relator brought this suit to oust the appellant from, and to establish himself in, said position.

The sufficiency of appellee's petition, and the sufficiency of appellant's answer, to which the lower court sustained the appellee's demurrer, raise the question for decision in this court.

The constitutional validity of said section 2, Acts 1895, p. 160, is challenged by the appellant. The section is as follows:

"Section 2. The said boards of prison directors shall be elected by the Governor, auditor, treasurer, secretary of State and attorney-general, who are hereby constituted a board for the purpose. The said State officers shall meet on the 12th day of March, 1895, at 10 o'clock A. M. on said day, in the office of the auditor of State, and proceed to select and appoint the members of the said boards of prison directors for each of said prisons, and every four years thereafter on said day for the said purpose; and in the case of a vacancy happening at any time on either of said boards of prison directors intermediate between the the said quadriennial elections, it shall be the duty of the auditor of State to convene said State officers in his office, by written notice served upon each of said officers, fixing a time for such meeting, at which meeting the said State officers shall fill any vacancy, in accordance with the provisions of this act. A majority of the State officers, when in session for said purpose, shall constitute a quorum, and a majority of the quorum shall have power to make any appointment upon the said boards of prison directors."

The principal contention of appellant's learned coun-

sel is that, under the constitution, section 1, art. 5, "The executive powers of the State" are "vested in" the "governor"; that appointment to office is an executive function, and that the constitution does not, expressly or by implication, deny the exercise of this function to the Governor. If this power was so lodged, in violation of the constitutional authority of the Governor, it is insisted, and follows, of necessity, the appointment of the directors, and, in turn, their appointment of the relator were invalid. The constitutional provisions upon which the issue rests, in addition to that vesting the executive power of the State in the Governor, are as follows: "The powers of the government are divided into three separate departments, the legislative, the executive, including the administrative, and the judicial, and no person charged with official duties under one of the departments shall exercise any of the functions of another, except as in this constitution expressly provided." Section 1, article 3. "All officers whose appointments are not otherwise provided for in this constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law." Section 1, article 15.

In ascertaining the intention expressed in these sections it will be necessary to examine other sections, which will be set forth hereafter. Our first inquiry is directed to the question, was it intended by the constitution to confer upon the Governor all appointing power? This inquiry need not be extended to the appointment of local administrative officers, nor to judicial officers, nor to the mere agencies by which the various departments, legislative, executive and judicial, perform their separate duties and functions, since that would carry our investigations over unnecessary and undisputed grounds. One method of answering the general inquiry is to ascertain if, by the constitution, it was intended to give the power

of appointment, in any instance, to the legislative branch of the Government.

By section 18, article 5, it is provided that "When, during the recess of the General Assembly, a vacancy shall happen in any office, *the appointment to which is vested in the General Assembly,*" etc., clearly implying that there was some office, or class of offices, the appointment to which was vested in, or intended, should be made by the General Assembly.

By section 30, article 4, it is provided that "No senator or representative shall, during the term for which he may have been elected, be eligible to any office, *the election of which is vested in the General Assembly.*" If the word *election* is employed synonomously with *appointment*, this provision implies, with equal force, the existence of power in the General Assembly to make appointments to office. If we conclude that the italicized words in these sections were put into the constitution without purpose and without meaning we but engage in making over that sacred instrument, and we condemn its framers for creating a mere medley of words. This we could not do if we would, for it is the function of the judiciary to interpret, to expose the meaning within the words of the constitution, and not to put meaning into the words, nor to eliminate sentences, phrases or words, nor to add to the terms written. We find in the constitution no other provision to which the two provisions last quoted could have been directed, excepting that found in section 1, article 15, *supra.*

Without having been directed to some other provision supplying the offices to be filled by the General Assembly, there is but one of two possible contingencies to be accepted: the constitution is framed in meaningless and confused language, or the words of section 18, article 5, *supra,* "the appointment to which is vested in the General As-

sembly," and probably the same words from section 30, article 4, *supra*, had reference to the "officers whose appointments are not otherwise provided for in the constitution," in section 1, article 15, *supra*.

It is insisted, however, that section 1, article 15, *supra*, does not give the power to the General Assembly to *appoint*, and that the language of the section, "in such manner as now is, or hereafter may be, prescribed by law," simply confers the power upon the Legislature to provide the manner of appointment and not to make the appointment. The consistency of the appellant's position requires the conclusion that *all* power to appoint to office is in the Governor; that the Legislature possesses only the power to provide the manner of appointment, and that such manner is limited to a provision that the Governor shall make it. It would seem to have been a remarkable conception of a constitutional convention to have written it down that the Legislature shall prescribe by whom appointments shall be made, but it shall be prescribed that the Governor shall make them. This conception, if written in the constitution, would be no more absurd than to have written it in part and left it in part to what the appellant insists a necessary implication. This theory does not relieve us of the embarrassment of finding repeatedly the expressions of the convention in the constitution, that there are "offices, the appointment to which is vested in the General Assembly." Such a theory would strike these words from the constitution or would render them barren and meaningless.

We need not ascertain and define the limits and extent of the appointing power of the Governor, nor is it necessary that we should take issue with the cases holding that the appointing power is naturally and properly an executive function. If the constitution has conferred

upon the legislative department of the Government functions which naturally and more properly belong to another it is not for us to say that the people could not have done so nor that the unwisdom of doing so will permit us to assign to the proper departments· their proper functions, and thereby do correctly for the people that which the framers of the constitution did· erroneously.

It is insisted that the former decisions of this court deny the power, under the constitution, of the General Assembly to appoint to office and declare the power to appoint as existing in the Governor. *City of Evansville v. State, ex rel.*, 118 Ind. 426; *State, ex rel.*, v. *Hyde*, 121 Ind. 20; *State, ex rel.*, v. *Denny, mayor*, 118 Ind. 382; *State, ex rel.*, v. *Denny, mayor*, 118 Ind. 449; *State, ex rel.*, v. *Peelle*, 121 Ind. 495; *State, ex rel.*, v. *Gorby*, 122 Ind. 17.

It is true that with sharp conflict of opinion these cases hold to the proposition that the power to appoint is an executive function. With this conclusion, as we have said, we have no present duty to agree or to disagree, further than to maintain that, if this conclusion is true, it could not prevent the people from making such distribution of that power as to them seemed wise or desirable. If this position is at variance with the holding of those cases, be it so. But further, as to those cases, it was said in *State, ex rel.*, v. *Gorby, supra*, that the Hyde case and the Peelle case were decided upon the question of the power to appoint officers made by the constitution elective by the people. This theory of those two cases was, as we think, correctly announced by the members of the court joining in the majority opinions in those cases.

The conflict was not one properly between the executive and the legislative departments over the right to make the appointments, as it is here contended to be. In

the three cases in 118 Indiana the primary question was one of local self-government, and incidentally the question of the power of the General Assembly, under section 1, article 15, *supra,* to appoint certain boards of city control. In considering the latter question the reasoning of the judges leads them to a construction of section 1, article 15, of the constitution, of which we will take notice hereafter.

The case of *State, ex rel.,* v. *Gorby, supra,* involved the right of the Legislature to appoint to an office held to be elective by the people. If the office here in question was an elective office, and had not been filled by election, as contemplated, the power of the Governor to appoint, not originally, as under section 1, article 15, *supra,* but to fill a vacancy, as under section 18, article 5, *supra,* of the constitution, was the real issue. The same may be said as to the other cases involving elective offices. Without suggesting as to whether the construction placed upon section 1, article 15, by those cases was *obiter dictum,* we pass to the consideration of the effect of the construction of that section, there made, upon the present case. The first of the cases, and that most clearly stating the views of the majority of the court, *State, ex rel.,* v. *Denny, mayor, supra,* after quoting section 1, article 15, proceeds: "This provision is evidently to be construed in the light of the laws in force at the time of its adoption. We think it would be impossible to ascertain its meaning in any other way. Other sections of the constitution make provision for appointments by the Governor and for certain appointments by the General Assembly, but there was still a large number of offices created by law for whose appointment no provision had been made. In view of this fact section 1, article 15, *supra,* was inserted, providing that such officers should be appointed in such manner

as then was, or should thereafter be, prescribed by law. It is disclosed by an examination of the laws then in force, that the manner of appointing, or electing, State librarian, State printer, warden of the State prison at Jeffersonville, commissioners of the insane asylum, and, perhaps, some other officers, for whose appointment no provision is made in the constitution, were elected or appointed by joint ballot of the two Houses of the General Assembly. This, at the time of the adoption of the constitution, was the manner prescribed by law for their appointment. This section provides that they shall continue to be so appointed unless a different mode is prescribed by law.''

The deduction from this argument is that, as to all of those offices existing and not provided for at the time of the adoption of the constitution, the General Assembly may appoint. At a very early period, and extending through the R. S. 1831 (p. 512), and R. S. 1838 (p. 572), the official management of the State's prison was by and through a superintendent, whose duties were assumed, not by appointment as to a political trust, but by contract in the nature of a lease, under which he supplied the needs, prescribed and enforced the discipline, received the labor of the prisoners and made and preserved for the State records of the transactions of the prison.

In 1843, R. S. 1843, p. 100, under the constitution of 1816, section 8, article 4, providing that all offices which might be created by the General Assembly should ''be filled in such manner as may be directed by law,'' the General Assembly named the offices to be filled by the vote of the two Houses of the General Assembly, and among them was that of prison superintendent, whose term of office was prescribed at five years. It may be observed that practically the same language as that em-

ployed in article 15, *supra*, section 1, of the present constitution was, under the former constitution, construed by the General Assembly, without question from the people, to mean that the General Assembly might appoint, and not that it should be prescribed by the General Assembly that the Governor should appoint. Later, and in 1846, Local Laws, p. 35, the office of warden was created, and it was expressly provided that his appointment should be by the General Assembly.

Here we have a like construction of the appointing power, as conferred by the constitution of 1816. We find in these enactments the rule for the official control of State's prisons existing at the adoption of the present constitution, and, upon the reasoning of the case from which we last quoted, the rule adopted by the constitution, namely, through appointments by the General Assembly. But it may be said that the northern prison was not in operation before the adoption of the present constitution, and that its official control could not have been then provided by law. This is true, but the rule of control and the source of power to control were in existence, and, upon the reasoning of that case, belonged to the General Assembly. It would not be a reasonable presumption that the framers of the constitution intended to separate the power of prison control so as to confer it upon the General Assembly as to one prison and upon the Governor as to another prison. The State's provision for the imprisonment of offenders was an institution of the State, and the two prisons are but branches of that institution, and are not different because located, for convenience, in remote parts of the State, than if the last had been but an addition to the first. The control of the State's prison was a governmental function which, by the rule of the case under consideration, was entrusted to the General Assembly.

If we should err in the position that the rule for control of the prison north was in force when the constitution was adopted and that instead it was by and through an independent office thereafter created, there is still another view of the question to be taken from the standpoint of the practical construction of the constitution.

We do not sympathize with the eloquent and able appeal of the appellant's counsel against the doctrine of practical construction as the resort of cowards and a makeshift for avoiding the intention of the framers of the constitution.

Upon the doctrine of practical construction and its legitimate scope we will quote the following from the opinion in *Hovey, Gov.,* v. *State, ex rel.,* 119 Ind. 386, in which a majority of the court then sitting concurred: "Our own and other courts have, time and time again, adjudged that practical exposition is of controlling influence wherever there is need of interpretation. The language employed by the courts is strong, and the current of opinion is unbroken. In speaking of the effect of a practical exposition, it was said by an able court that: 'It has always been regarded by the courts as equivalent to positive law.' *Bruce* v. *Schuyler,* 4 Gilm. (Ill.) 221. In adhering to long continued exposition, another court said: 'We can not shake a principle which, in practice, has so long and so extensively prevailed.' *Rogers* v. *Gooden,* 2 Mass. 478. But it is unnecessary to quote the expressions of the courts, for harmony reigns throughout the whole scope of judicial opinion upon the subject."

The present case presents, as strongly as any in the State's history, a practical construction of our present constitution upon the question in review. Beginning with the session of 1855, when the first board of prison directors was created, and at the first session of the Gen-

eral Assembly after the adoption of the constitution, when existing prison leases were permitted, we find the General Assembly assuming the appointing power as to officers of State's prison control.

We find that in 1859, the constitution not yet ten years in force, the General Assembly assumes and exercises the power of appointment of the State's prison directors for the northern prison. We find that from session to session from those periods to the session of 1893, this power was assumed and exercised by the General Assembly without exception, doubt or question of authority. The exercise by the General Assembly, for nearly forty years, of this power, without question from the people, and covering periods of the bitterest political history in the annals of our State and Nation is not the only fact giving strength to the construction favoring the existence of that power. In the early periods of that assumed authority there were in the General Assembly, as members thereof, David Kilgore, Walter March, Walter E. Beach, Thomas D. Walpole, Henry G. Todd, Amzi L. Wheeler, Ezekiel D. Logan, Rodolphus Schoonover, John L. Spann, Samuel J. Anthony, Jefferson Helm, John Mathes, Spencer Wiley, William F. Sherrod, George W. Moore, Hugh Miller, Isaac Kinley, Allen Hamilton and possibly others who had also been members of the constitutional convention. Not only this fact, but the further fact that, during the period of this long acquiescence in the construction of the constitution, favoring the existence of the power of appointment in the General Assembly, there sat as Governors of the State men familiar with the constitution, its origin, and its intended reforms, and lawyers whose ability and fame are the just pride of our State, including in the long list the names of Wright, Willard, Hammond, Lane, Morton, Baker, Hendricks, Porter, Gray

and Hovey. It is significant also that Governor Hovey, in his numerous contests over the question of the proper lodgment of the appointing power did not question the power of the Legislature to appoint to the office of prison director, though such appointments were twice made during his service as Governor. If we felt that the question as to the power of the Legislature to make the appointment of prison officers, construing the constitution upon its letter and spirit, were doubtful, we should feel it our duty to submit to this practical exposition. But we do not regard it as doubtful, and are constrained to differ with the construction of section 1, article 15, as held, or as the reasons given in the cases relied upon by the appellant imply, so far as they may be deemed authority, against the right of the Legislature to choose officers for the control of the prison north.

The principal decision upon which those cases rest, in so far as they discuss section 1, article 15, *supra*, is that in the *State, ex rel.*, v. *Kennon*, 7 Ohio St. 546. The provision of the constitution of Ohio, considered in that case and corresponding to that of this State, is as follows: "The election and appointment of all officers, and the filling of all vacancies, not otherwise provided by this constitution, or the constitution of the United States, shall be made in such manner as may be directed by law; *but no appointing power shall be exercised by the General Assembly*, except as prescribed in this constitution and in the election of United States senators." It was there held that under this provision the General Assembly had no power of appointment to a certain office created after the adoption of the constitution. This conclusion is not remarkable, when we recall the words of the constitution, above italicized, denying the right of the General Assembly to appoint, and when we observe that the power to prescribe is given with that expressed limita-

tion upon it. In this view of the case it renders very little support to the construction of our constitution urged by appellant. Under this provision, however, it has been recognized, in at least two instances, by the same court, that the General Assembly is empowered to designate the person, body or functionary to make such appointments. *State, ex rel.*, v. *Covington*, 29 Ohio St. 102; *State, ex rel.*, v. *Smith*, 44 Ohio St. 348.

We have demonstrated very clearly, we believe, that the appointment to the office of prison director is not, by our constitution, entrusted to the Governor alone. Conceding then, for the sake of the inquiry, that the Legislature's power was to prescribe the manner of appointment and not to make the appointment, has it violated this privilege by naming the persons or functionaries to make the appointment? Having under consideration an appointive office, we do not consider to what extent the word "manner," as employed in section 1, article 15, *supra*, may include a choice by the General Assembly as to whether a given office may be filled by an election, and we confine our consideration of the word in its relation alone to appointive offices.

From the appellant's contention his definition of "manner" is, necessarily, *a direction to the Governor to appoint*. We have suggested already the fallacy of this position. Nor do we believe that "manner" was intended to permit simply the direction of the particular mental operation in arriving at a choice, nor the qualifications of the person to be chosen, nor character of commission, nor the duration of the term, nor the duties of the person or position, nor the time nor the place of appointing. All of these, save the first, are purely legislative functions, and the first is necessarily with the person chosen, and its direction is not essential to the performance of the privilege, and is not susceptible of legis-

lative, executive or judicial direction. "Manner," according to the appellant's theory, means the person or functionary to make the appointment. This is so by the case of *State, ex rel.,* v. *Denny, mayor, supra,* where it was said that the manner of appointment of librarian, etc., before the constitution, was by the Legislature, and that the same manner of appointment, as to such offices, is proper since the constitution. Such is the effect also of the holding in *State, ex rel.,* v. *Hyde,* 129 Ind. 296.

In this we agree, not, of course, going to the extent of conceding that it means that, as to the office in question, the Governor shall be that functionary. In the case of *State, ex rel.,* v. *Hyde,* just cited, the controversy was as to the power of the Governor to appoint to the office of State superintendent of oil inspection, as against the power of the State geologist to make such appointment, as given by the act of 1891, and it involved a construction of section 1, article 15, *supra.* The judges, including Judges COFFEY and OLDS, who had concurred in the majority opinions in the 118 Ind. and 121 Ind. cases, *supra.* Judge ELLIOTT, who dissented in those cases, and Judges McBRIDE and MILLER, filling vacancies occasioned by the death of Judges MITCHELL and BERKSHIRE, after those cases were decided, all concurred in the following reasoning and conclusions by Mr. Chief Justice COFFEY: "In this case, however, we are met squarely with the question as to whether the General Assembly possesses the power to confer on the State geologist the legal right to appoint to the office involved in this suit. If it possesses such power the judgment of the circuit court must be affirmed, otherwise it must be reversed. The solution of the question presented for decision depends upon the nature of the office and the construction to be placed upon this provision of our State constitution. The office is not an administrative State office, whose in-

cumbent is charged with the administration of a separate department of the State government. The duties to be performed are such as pertain purely to the police.

"It is an office, therefore, which may be filled by appointment, and as the appointment of the incumbent is not provided for in the constitution, the case falls clearly within the provisions of section 1, article 15, *supra*. That section applies to such officers only as may be appointed, and for whose appointment no provision is made in the constitution. As the incumbent of the office in question may be appointed, and as no provision is made in the constitution for his appointment, the General Assembly has the power to provide by law for the manner of his selection. It has the power to provide that such office shall be filled by popular election, or that it shall be filled by appointment. While the appointment to office is, generally, the exercise of an executive or administrative function, we do not think it must, of necessity, be made by the chief executive, for by the terms of section 1, article 3, of the constitution, the executive department of the State includes the administrative. Of course it was not the intention that any administrative State officer should perform any duty properly and necessarily belonging to the Governor of the State, but it was, we think, the intention that such officers should have the power to perform such duties as should be required of them by law, in the administration of the State government, where such requirement in no wise conflicted with the powers delegated to the Governor alone. The appointment to office being generally the exercise of an executive or administrative function, the power must be conferred upon some executive or administrative officer, but the State geologist is an administrative State officer, elected by the people." * * * "The office involved in this controversy does not belong to the class which

must, of necessity, be filled by the Governor, but it is an office created by statute, largely under the control of the Legislature which created it, and falls within the constitutional provision which confers upon the General Assembly the power to prescribe the mode or manner of selecting its incumbent.'' *State, ex rel.*, v. *Hyde, supra.*

To name the functionaries, therefore, was the privilege of the General Assembly, and it only remains to inquire if, in doing so in this instance, the commingling of the executive with administrative officers in the performance of the duty to appoint, has violated any provision of the constitution. Counsel urge that the power conferred constitutes an independent office, a board of appointment, and is not an addition of duties to offices already imposed; that ''no one can be associated with the Governor in the performance of executive duties,'' quoting from *Gray, Gov.*, v. *State, ex rel.*, 72 Ind. 567 (578).

We do not question the correctness of that holding, but, as we have already shown, the duty in question, while possibly in the nature of an executive duty, can not, under our constitution, be classed as an executive duty, since, by that instrument, the duty was entrusted to the legislative department for performance by it, or for the purpose of this question in the manner which it might prescribe.

The contention that the association with the Governor, of administrative State officers, in the duty charged by the law in review, infringes his prerogative as the executive head of the State, rests upon the proposition that the power of appointment, in this instance, is an executive function. We should not incline to the view that, if an executive function, the duties and responsibilities attending the exercise of that function could be shared by administrative officers. But, as we have shown, that

is not the case before us.   Nor do we find it necessary
to our conclusion that, while by constitutional permit the
appointment may be made directly by the General As-
sembly, it must be done so, for, by the plain language of
the constitution, the manner is a matter of choice by the
General Assembly.   This choice is not embarrassed by
limitations or conditions, and to render it invalid it must
be so exercised as to confer it upon some one or number
incapable of its performance.

There is no expressed inhibition of our constitution to
the discharge of this duty by executive or administrative
officers, or by both classes of officers.   It is the consti-
tutional theory of our form of government, as evidenced by
the association of the executive and the administrative in
one department of the government (section 1, article 3,
*supra*), by casting the duty upon the Governor of seeing
that the laws are enforced (by administrative officers, of
course, section 16, article 5), and by the provision that
"the Governor shall transact all necessary business with
the officers of the government" (section 15, article 5),
that the relation of the executive and the administrative
subdivisions are not to be so separated as to deny to the
former all participancy in the affairs of the latter.   Not
only is there no expressed inhibition against the associa-
tion of the Governor with administrative State officers,
in the discharge of any duty not involving powers and
privileges delegated by the constitution to either alone,
or to some other department of the government, but, in
our opinion, such association is proper, and  within the
spirit of the provisions of the constitution just referred
to.

Section 1, article 3, *supra*, does not deny the idea of such
association.  It divides the powers of government into the
legislative department, the  executive  department, "in-
cluding the administrative," and the judicial department,

and it is enjoined that "no person charged with official
duties under one of these *departments* shall exercise any
of the functions of another." It will. be observed that
it is not forbidden that those assigned to one department
shall exercise any of the functions of another within
such department. While not agreeing that any matter
entrusted by the constitution directly to either subdi-
vision of the executive department may be exercised by
the other, we think it entirely certain that the inhibition
of the section of the constitution last referred to does not
deny the exercise jointly by the members of both subdi-
visions of any function not so delegated to either alone,
and consistent with the theory that the duty involves a
function of government falling within that department.
Under the old constitution the Legislature gave to the
Governor the duty of selecting a visitor to the State's
prison. It is true that the visitor was not an officer hav-
ing a voice in the control of the prison, but he was given
access to the prison and an observation of its manage-
ment, with a view to advising the executive of misman-
agement and enabling him to "see that the laws were
faithfully enforced." The only official existing, at the
adoption of the present constitution, having a voice in
the control, and whose position was by political choice,
was a warden who was chosen by the Legislature, and,
at the same time, the institution was, necessarily, as it
is now, one of the administrative agencies of the State,
falling under the executive department of the govern-
ment. Its management was not through purely execu-
tive agencies, nor were they legislative, and they were
in no sense judicial. They were of the administrative
agencies of the State, subject to executive authority only
so far as executive duties required the laws to be enforced
by the Governor. Nothing exists in the present consti-
tution to change this unity of interest in the institution

French v. The State, *ex rel.* Harley.

or to take it from the list of administrative agencies of the State.

This union of interest, in like agencies, where the power of control is not directed by the constitution, has, for many years, and in many instances, been the authority for associating the Governor with administrative officers in the performance of governmental duties, and some of them are as follows: Commissioner of Public Printing, Governor, Secretary and Auditor of State. R. S. 1894, section 7564; appointment of Monument Commissioners, Acts 1887, p. 30: Governor, Secretary, Auditor and Treasurer; Regents of Monument, same officers, Acts 1895, p. 135; State Board of Education: Governor and various educational officers, R. S. 1894, section 5849; State Board of Health: Governor, Secretary and Auditor constitute a *Board of Appointment,* R. S. 1894, section 6711; Trustees of Purdue University: Governor, Agricultural and Horticultural Boards, R. S. 1894, section 6176; State Board of Tax Commissioners: Governor, Secretary, Auditor and two citizens, R. S. 1894, section 8535; Board of Election Commissioners: Governor and two electors, R. S. 1894, section 6213; State Board of Charities: Governor and six citizens, R. S. 1894, section 3193; Executive Council for purchase of supplies and repairs of State House: Governor, Secretary and Treasurer, R. S. 1894, sections 7783, 7789; State Bank Examiner, appointed by Auditor with approval of Governor, R. S. 1894, section 2938; School Book Commissioners: Governor and others, the members of State Board of Education, R. S. 1894, section 5853; University Visiting Board: Governor and other officials, R. S. 1894, section 6076; Canvass of Election Returns: Secretary, with Governor, R. S. 1894, section 6282; Board to Examine Treasury: Governor, Secretary and Auditor, R. S. 1894, section 7670; Board of Audit for

Female Reformatory: Governor, Auditor and Secretary, R. S. 1894, section 8256.

This rule of associating the executive with the administrative officers in the performance of supervisory administrative duties has obtained as to the President of the United States, and in the States of Alabama, Arkansas, California, Colorado, Connecticut, Dakota, Florida, Illinois, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Nebraska, New Hampshire, New Jersey, Nevada, New York, North Carolina, Oregon, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, West Virginia, Washington and Wisconsin. In the States named, the Governor is a member of from one to twelve boards of the character of those of which the Governor of this State is a member, as above shown.

In the case of *Gray, Gov.,* v. *State, ex rel., supra,* the question involved was upon a statute, enacted in 1872, making the Governor, Attorney-General, Secretary of State and Treasurer of State, jointly, the agents of the State to scrutinize and pass upon the genuineness of certain bonds of the State, and to borrow money and pay off such bonds. It was held that the duty of these officers was not executive, and it was said: "The Governor and other officers named in the act may well be regarded as constituting a board, organized by the Legislature, for the performance of certain duties; and a mandate will lie against them to enforce the performance of the duties." The duties involved were ministerial and *quasi* judicial, but related to the administrative branch of the government. The statute there involved, and the conclusion of the court, quoted above, recognize the right to associate the Governor with administrative officers in the performance of duties pertaining to the administrative branch of the government.

We are not required, however, to find express authority in the constitution for this association of the officers of two sub-divisions of one department of the government in the discharge of duties falling within that department and not entrusted, by the constitution, to either alone. Nor is it necessary that we should find that such association is authorized from authority of the constitution necessarily implied. It is not essential to the existence of such right that the spirit of the constitution clearly admits it. Our inquiry must be, does it infringe any provision of the constitution? *Hedderich* v. *State*, 101 Ind. 564; *Campbell* v. *Dwiggins*, 83 Ind. 473; *Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185; *Beauchamp* v. *State*, 6 Blackf. 299; *Wilkins* v. *State*, 113 Ind. 514.

In the last of these cases it was said (p. 516): "It is established law that an act of the Legislature can not be annulled by the judiciary in any respect unless it clearly contravenes some provision of the constitution. Doubt must be resolved in favor of the validity of the statute. Since this doctrine was announced by Chief Justice Marshall, early in the history of our country, it has been inflexibly adhered to by all the courts."

It was further said by this court in *Robinson* v. *Schenck*, 102 Ind. 307: "It devolves upon the party who assails a statute, on the grounds that it violates the constitution, to show a clear violation and to point out the provision violated; failing in this, his attack is unavailing."

In that case this court quoted, with approval, the following conclusion: "That upon a constitutional question, as to which we have no doubt, we can not follow a former decision against our present conviction, for the reason that to do so would violate our oath to support the constitution."

With our present conviction, that there is not even a

doubt of the validity of the statute in question, we have but one duty and one privilege, and that is to uphold the law.

The judgment of the circuit court is affirmed.

Filed June 13, 1895.